699 P.2d 120

**Richard GUTIERREZ, Plaintiff,**

**v.**

**CITY OF GALLUP, a municipal corporation; and Rockwood Insurance Company, Defendants/Third-Party Plaintiffs-Appellees,**

**v.**

**Vicente B. JASSO, Superintendent of Insurance; and the New Mexico Subsequent Injury Fund, Third-Party Defendants-Appellants.**

**No. 7552.**

Court of Appeals of New Mexico.

Sept. 11, 1984.

Certiorari Quashed April 24, 1985.

Howard R. Thomas, Sager, Curran, Sturges & Tepper, P.C., Albuquerque, for defendants/third-party plaintiffs-appellees.

Jake R. Evans, Evans and Robles, P.A., Las Cruces, for third-party defendants/appellants.

## OPINION

NEAL, Judge.

This is a workmen's compensation case. At the time of trial, plaintiff was a sixty-year-old laborer with a fourth grade education. He began working as a laborer for the City of Gallup over thirty years ago.

Before, he had worked in coal mines and asphalting. He then became a garbage truck driver for the city and remained in that position about twenty-eight years, until he received an accidental on-the-job injury in 1977.

The injury occurred when plaintiff's truck was hit and caught fire. He jumped from the truck, injuring his left knee, right arm and back. The knee injury was particularly important; it caused continual pain and prohibited him from lifting and kneeling. He settled his claim against the tortfeasor and did not file for workmen's compensation.

After receiving medical treatment he attempted to return to work driving garbage trucks, but the knee injury prevented him from driving a garbage truck or doing any physical labor. The injury also prevented him from doing any other work he had done previously.

Rather than terminate a long-term employee, the city created a light duty job for plaintiff at the wastewater plant. The job involved very light work such as general housekeeping, and no lifting or heavy labor. Even so, co-workers heard him complain of pain in his knee; he sometimes used a cane.

In 1980, plaintiff was injured at the wastewater plant. He stepped on a grate which became dislodged; he fell into the hole beneath the grate, and the grate fell on him, breaking his right ankle.

After the second injury, he could not use his right leg to support the previously injured left leg. He always uses a cane. He cannot do even the light duty work he was doing at the time of the injury. He testified that due to the 1977 injury to his left leg, the 1980 accident disabled him much more than if he had only that second injury.

A Certificate of Pre-existing Physical Impairment was filed with the New Mexico Superintendent of Insurance on March 31, 1983. The certificate, signed by plaintiff and Dr. Robert McRoberts, states that plaintiff had a two percent impairment to the whole man due to the left knee injury suffered in 1977. It also states that the impairment required him to undertake light duty work because he was unable to drive garbage trucks.

After the 1980 accident, plaintiff was paid workmen's compensation for total disability. When the insurer reduced the payments to a scheduled injury, plaintiff sued the defendants, the City of Gallup and Rockwood Insurance Company. Defendants impleaded the New Mexico Subsequent Injury Fund.

The court found plaintiff totally and permanently disabled as a result of accidents arising out of and in the course of employment. This appeal between the Fund and the defendants does not challenge that finding. Rather the Fund, as appellant, challenges its liability on the three grounds asserted for reversal: (1) that plaintiff settled his 1977 claim against the tortfeasor and therefore waived his right to compensation; (2) that depositions were improperly used because they were taken before the Fund became a party to the suit; and (3) that there was not substantial evidence to support the court's finding that of plaintiff's total disability, the defendants are entitled to recover forty-five percent from the Fund.

### I. Effect of Settlement of 1977 Injury.

The Fund contends that the fact plaintiff chose to settle his 1977 claim against the tortfeasor, rather than in workmen's compensation, precludes recovery by defendants against the Fund on the third-party complaint.

The policy and intent of the Subsequent Injury Act, NMSA 1978, Section 52–2–1 to 52–2–13, is to remove obstacles to the employment of the handicapped so that physically handicapped persons will be able to maintain independence and self-respect through self-support. Section 52–2–2. The Act creates the Subsequent Injury Fund toward that end. The Act limits the workmen's compensation liability of a subsequent employer of a previously injured employee to that directly attributable to the

current injury. Section 52–2–6(C). The Fund pays the remainder of the compensation.

■ Assuming a certificate of pre-existing impairment, prerequisites for establishing liability of the Fund are:

1. A pre-existing, permanent physical impairment;

2. A subsequent, permanent, compensable injury; and

3. The subsequent disability must be materially and substantially greater than that which would have resulted from the second injury alone. *Ballard v. Southwest Potash Corp.* 80 N.M. 10, 450 P.2d 448 (Ct.App.1969). The procedure involved requires the injured person to file a certificate for pre-existing physical impairment stating the nature of the impairment from the first injury, as well as the percentage of disability. In the event of a subsequent injury, the employer's liability is limited to that attributable to the current injury. Section 52–2–6.

■ Plaintiff met all elements of the test set out above. He had a permanent physical impairment. Under Section 52–2–3, a "permanent physical impairment" is a permanent physical condition which is an obstacle to employment. Testimony was received that the 1977 injury prevented plaintiff from performing the work he did before that injury. A special light duty job was created for him.

■ The certificate states that the impairment was caused by the prior injury. Section 52–2–6(D) states that if the certificate certifies the impairment was the result of an accident, the Act is "applicable to *any* disability arising out of accident or occurrence taking place after the date a certificate is executed." (Emphasis added.) Therefore liability of the Fund is established when the pre-existing physical impairment requirement is satisfied. The statutes contain no requirement that the impairment be compensable under the Workmen's Compensation Act or that the worker has used the workmen's compensation remedy rather than seeking a private settlement. The legislature did not write such a requirement into the Act, and we will not add provisions which the legislature has seen fit to leave out. *State v. Pendley,* 92 N.M. 658, 593 P.2d 755 (Ct. App.1979).

Contrary to the Fund's argument, we do not view sections 52–2–12 and 52–2–13 as requiring a different result. Nor does NMSA 1978, Section 52–1–56(C) have any application to the Subsequent Injury Act except to preserve the right of reimbursement to the employer or its insurance carrier and to extend that right to the Fund.

Viewed in light of the purpose of the Act, such a requirement is illogical. Before subsequent injury acts became the rule—today all states but Georgia have enacted similar laws—employers were hesitant to hire handicapped workers due to the workmen's compensation liability they would face if the worker suffered a further injury which, in addition to his previous impairment, left him disabled. An injury to one eye, arm, or leg might be an impairment, but a subsequent injury to the other eye, arm, or leg might be totally disabling. The employer then was faced with greater liability and increased insurance premiums for the second accident as a result of the first than he would have been for the second injury alone, and was discouraged from hiring handicapped workers. Subsequent injury acts make the employer liable for only the amount of disability attributable to the second injury, while the Fund pays the difference between that amount and the total amount to which the worker is entitled as a result of both of his injuries. *See* 2 A. Larson, *Larson's Workmen's Compensation Law* § 59.31(a) (1983). Employers are therefore not discouraged from hiring handicapped workers.

The result the Fund seeks would discriminate between two classes of handicapped workers, those who availed themselves of the workmen's compensation remedy for an earlier injury and those, equally physically impaired, who did not. We can discern no

policy goal which would support such discrimination.

The Fund also argues that its liability should be barred because it would allow plaintiff double recovery for his injuries. We find no support for this proposition. A basic concept of the Subsequent Injury Act is that the total injury is greater than the sum of its component injuries. The fact that the 1977 injury was compensated in a private settlement does not bar recovery for a subsequent injury which, combined with a prior impairment, results in total disability. Further, the statutory language states that the Fund is liable for a subsequent injury and the employer's liability is limited to that disability attributable to the current injury. *See* § 52–2–6(C) and (D). The Fund's liability is the difference between the compensation payable for the combined injury and the compensation which would have been payable as a result of the second injury alone. There is no double recovery. We might also reiterate that the legislature has not seen fit to reduce the Fund's liability by the amount of an earlier settlement or workmen's compensation award, and we see no reason to add such a requirement which contravenes the intent and purpose of the statutes.

## II. Depositions.

Before the Fund became a party to the suit depositions were taken of Dr. Robert McRoberts and Dr. Gary Singer. The depositions were admitted into evidence at trial as to the issues between plaintiff and defendants. The Fund did not object. When defendants offered the deposition of Dr. McRoberts into evidence against the Fund, the court withheld decision regarding the admission of the depositions until the Fund deposed Dr. McRoberts. Later, the court repeated the offer that the Fund could re-depose the doctors. The Fund never redeposed Dr. McRoberts or moved to do so.

On appeal the Fund argues that the depositions were improperly admitted because they were taken before the Fund became a party. The argument fails for two reasons.

The purpose of requiring that depositions only be used against parties present for the deposition, or who had notice of it, is to insure that a party against whom a deposition is offered has an opportunity to cross-examine the deponent. *See* NMSA 1978, Civ.P.R. 32(A) (Repl.Pamp. 1980); 4A J. Moore, T. Lucas & D. Epstein, *Moore's Federal Practice* § 32.02[1] (2d ed. 1983). The procedure followed by the court insured the Fund the opportunity to cross examine the doctors. The Fund did not take advantage of the opportunity. It cannot now complain about the use of the depositions. *See Empire Seafoods, Inc. v. Anderson*, 398 F.2d 204 (5th Cir.), *cert. denied*, 393 U.S. 983, 89 S.Ct. 449, 21 L.Ed.2d 444 (1968).

Second, the Fund relied on the deposition of Dr. McRoberts in its requested findings of fact. Therefore, it waived any objection to the admission of depositions which it relied on. *Medina v. Zia Co.*, 88 N.M. 615, 544 P.2d 1180 (Ct.App.1975), *cert. denied* 89 N.M. 6, 546 P.2d 71 (1976). *See Omaha Hardwood Lumber Co. v. J.H. Phipps Lumber Co.*, 135 F.2d 3 (8th Cir. 1943).

## III. Substantial Evidence.

The Fund contends that there was not substantial evidence to support the trial court's findings and conclusions holding the Fund liable. The argument is based on the finding that plaintiff's disability is materially and substantially greater than that which would have resulted from the second injury alone.

Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Toltec International, Inc. v. Village of Ruidoso*, 95 N.M. 82, 619 P.2d 186 (1980). The evidence, and all reasonable inferences to be drawn from it, must be viewed in the light most favorable to the court's decision. *Scott v. Transwestern Tankers, Inc.*, 73 N.M. 219, 387 P.2d 327 (1963); *Lujan v.*

*Pendaries Properties, Inc.*, 96 N.M. 771, 635 P.2d 580 (1981). "Only the trier of facts may weigh the evidence, determine the credibility of the witnesses, reconcile inconsistent or contradictory statements of a witness or of witnesses, and decide where the truth lies." *Worthey v. Sedillo Title Guaranty, Inc.*, 85 N.M. 339, 341, 512 P.2d 667, 669 (1973).

We have reviewed the record and determine that there was substantial evidence to support the trial court's findings. The testimony of the plaintiff, his co-workers and supervisors, and the certificate of pre-existing physical impairment all provide substantial evidence to support the Fund's liability. The Fund cites evidence, which we will generously refer to as conflicting, in support of its position. We have often stated that we do not weigh conflicting evidence, that is the duty of the trial court, but we have viewed the record and determine that there was substantial evidence to support the court's findings of fact and conclusions of law.

The Fund also contends that two of the findings are inconsistent with the findings that the impairment caused by the 1980 injury was substantially greater than that which would have been caused by the 1980 injury alone due to the 1977 injury. Those findings are quoted below:

10. As a result of the injuries sustained on November 20, 1980, the Plaintiff was rendered totally unable to perform the usual tasks and the work he was performing at the time of his injury and wholly unable to perform any work for which he is fitted by age, education, training, general physical and mental capacity and previous work experience.

12. Although the Plaintiff suffered some disability prior to the accident of November 20, 1980, the Plaintiff was working and doing his job for the City of Gallup and the accident of November 20, 1980, as a medical probability caused the Plaintiff to become totally permanently disabled.

We do not believe the quoted language may be viewed as inconsistent with the court's other findings. They do not say, as the Fund contends, that the 1980 injury alone caused the total disability. Rather, read in sequence with the remainder of the findings and conclusions, they mean that the 1980 accident precipitated total disability which was caused by both injuries together. The facts support the finding of liability on the part of the Fund.

The judgment of the trial court is affirmed, with the Fund to pay the defendant's costs and $1,500.00 attorney fees on appeal.

IT IS SO ORDERED.

DONNELLY, C.J., and BIVINS, J., concur.