713 P.2d 557

**Buford A. SMITH,
Plaintiff/Appellee/Cross-Appellant,**

v.

**TRAILWAYS, INC., Employer and Liberty Mutual Insurance Company, Insurer,
Defendants/Cross-Appellees/Cross-Appellants,**

v.

**STATE of New Mexico SUBSEQUENT INJURY FUND, Third Party
Defendant/Appellant/Cross-Appellee.**

No. 8299.

Court of Appeals of New Mexico.

Jan. 7, 1986.

742

Richard J. Crollett, Albuquerque, for plaintiff/appellee/cross-appellant.

Ellen M. Kelly, Barbara L. Mathis, Gallagher & Casados, P.C., Albuquerque, for third party defendant/appellant/cross-appellee.

Ben M. Allen, Rodey, Dickason, Sloan, Akin & Robb, P.A., Albuquerque, for defendants / cross-appellees / cross-appellants Trailways, Inc. and Liberty Mut. Ins. Co.

## OPINION

BIVINS, Judge.

In his second amended complaint, plaintiff sought, under the first count, worker's compensation and related benefits from his employer, Trailways, Inc., and its carrier, Liberty Mutual Insurance Company (hereinafter "employer"). Plaintiff sought, under the second count, relief from the subsequent injury fund ("Fund"), pursuant to the Subsequent Injury Act, NMSA 1978, Sections 52–2–1 through –13. From a judgment awarding plaintiff total disability and apportioning liability after the first eight weeks, one-half to the employer and one-half to the Fund, the Fund appeals. Plaintiff and the employer cross-appeal.

The Fund raises two issues on appeal:

1. Whether the worker has the burden of proving the extent of liability of the Fund and, if so, whether plaintiff carried that burden in this case.

2. What is the proper basis for apportionment of liability between the Fund and an employer under the Subsequent Injury Act.

In its cross-appeal, the employer raises the same issue as number 2 above, and in addition:

3. Whether the trial court erred in failing to find that plaintiff suffered no permanent increase in disability attributable to the second injury alone and that the entire increase in his disability was attributable to the aggravation of his pre-existing condition.

Finally, plaintiff's cross-appeal challenges the award of attorney's fees, raising the issue:

4. Whether the trial court abused its discretion by failing to consider fully all necessary factors in awarding attorney's fees.

We hold that while the party seeking relief against the subsequent injury fund, herein plaintiff, must carry the initial burden to show entitlement to recovery from the Fund, the burden of proving apportionment between the employer and the Fund

should be borne by the employer, not the worker. We set out the method of apportioning liability between the employer and the Fund and, because this method was not followed, remand for new findings of fact and conclusions of law on that issue. We hold that the evidence will support an apportionment between the employer and the Fund, thereby rejecting the employer's claim to the contrary. Finally, we affirm the trial court's award of attorney's fees as being within the criteria laid out by the New Mexico Supreme Court.

## FACTS

Plaintiff, a bus driver, has had a long history of back problems. For a catalog of plaintiff's prior back injuries, including surgery, from 1974 to December 1978, see *Smith v. Trailways Bus System*, 96 N.M. 79, 628 P.2d 324 (Ct.App.1981). In that earlier case, the trial court awarded plaintiff 25% partial permanent disability due to a December 6, 1978 accidental injury. Plaintiff was receiving benefits based on that award when he brought the current action. We pick up where *Smith* ends.

This claim is based on three accidental injuries occurring in December 1980, February 1982, and May 1983. Plaintiff called one medical expert, Dr. Barry Maron. Defendants offered no medical proof, relying on the testimony of Dr. Maron.

Dr. Maron said that as a result of the December 6, 1978 accidental injury, *Smith*, plaintiff had a traumatic cervical syndrome, for which he assigned 15 to 20% permanent physical impairment, and had a degenerative disc problem, for which he assigned 25 to 35% permanent physical impairment. According to the evidence, plaintiff suffered a work-related injury in December 1980, while lifting an eighty-pound package. In February 1982, plaintiff sustained a work-related accidental injury while leaning over a suitcase. As to these two accidents, Dr. Maron said that while the injuries aggravated plaintiff's existing back problem, they were temporary and that plaintiff's back, after a period, reverted to the prior condition with the same impairment.

In May 1983, plaintiff felt a tearing sensation above the site of his spinal fusion while lifting a box. He experienced pain after this accident which was different than that he had felt up to that point. The pain, which previously had been tolerable, became severe. Although plaintiff returned to his duties as a driver, he had to stop to stretch numerous times during a trip. When he had to stop working, the employer put him on sick leave. In March 1984, he requested, due to financial needs, that Dr. Maron release him to return to work. Dr. Maron agreed, but the employer's doctor rejected plaintiff. In May 1984, the employer allowed plaintiff to try to drive to El Paso and back. Due to pain, plaintiff made only one trip. The employer offered plaintiff a job as dispatcher. He worked a ten-to-twelve-hour shift during which he could either sit or walk around, as he chose. Because of pain, this job lasted only six days. Dr. Maron then recommended that plaintiff be medically retired.

The trial court found plaintiff temporarily totally disabled for a period of three weeks and three days following the December 1980 accidental injury, and temporarily totally disabled for seven weeks and four days following the February 1982 accidental injury. It also found that prior to the May 1983 accidental injury, plaintiff had fully recovered from the two previous accidents and had suffered no physical limitations or disability as a result of these two accidents. With the exception of the short periods of temporary total disability, the trial court found plaintiff remained 25% partially permanently disabled until May 19, 1983, although he could perform well enough to retain his employment as a bus driver. The trial court also found that prior to May 19, 1983, plaintiff had a permanent impairment of his lower back of between 25 and 35% and to his cervical region of between 8 and 10%.

The trial court found that, as a result of the May 19, 1983 accidental injury, plaintiff was totally and permanently disabled and that the disability is materially and substantially greater than that which would

have resulted from the May 19, 1983 injury alone.

After ordering employer to pay temporary total disability for the two earlier accidents, medical and related expenses, the trial court ordered payment of total permanent disability, less credit for payments made pursuant to *Smith*. The trial court then ordered recovery by employer from the Fund of 50% of the benefits, after payment of the first eight weeks. Medical expense, vocational rehabilitation and attorney's fees were ordered paid equally by the employer and the Fund.

## DISCUSSION

### 1. Which party has the burden of proving the extent of liability of the Fund?

We answer the question by first discussing the elements necessary to justify recovery against the Fund, the party or parties which bear the burden of proving those elements, and then decide which party bears the burden of proving apportionment between the employer and the Fund, in the event the Fund becomes liable.

■ In *Ballard v. Southwest Potash Corp.*, 80 N.M. 10, 450 P.2d 448 (Ct.App. 1969), this court said, assuming procedural requirements have been met, applicability of the Subsequent Injury Act depends on four things:

    (a) A pre-existing permanent physical impairment.

    (b) A subsequent disability compensable under our Workmen's Compensation Act.

    (c) The subsequent disability must be permanent and

    (d) The subsequent disability must be " * * * materially and substantially greater than that which would have resulted from the subsequent injury alone * * *".

*Id.* at 11–12, 450 P.2d at 449–50.

*Ballard* did not, however, decide which party has the burden of proving the applicability of the Subsequent Injury Act and, thus, the liability of the Fund. Section 52–2–5 sets forth how claims against the Fund shall be pleaded. If the worker is not receiving compensation, he may bring an action against his employer and its carrier under the Workmen's Compensation Act "also alleging his right to payment from the fund," Section 52–2–5(A), which is essentially the procedure followed in this case. If the worker fails to allege his right to payment from the Fund, the employer or its carrier may implead the Fund. § 52–2–5(B). Also, with respect to a worker receiving compensation benefits, the employer or its carrier may continue the benefits and seek declaratory relief as to the liability of the Fund. § 52–2–5(C).

■ Thus, it follows that the party alleging the affirmative of an issue has the burden of proving that issue. *J.A. Silversmith, Inc. v. Marchiondo*, 75 N.M. 290, 404 P.2d 122 (1965); *Carter v. Burn Construction Co., Inc.*, 85 N.M. 27, 508 P.2d 1324 (Ct.App.1973). Because plaintiff in this case alleged a right to payment from the Fund, he had the initial burden of proving four elements under *Ballard*.

Once it has been established that the Subsequent Injury Act is applicable, then the question arises as to which party must prove apportionment between the employer and the Fund. The Fund argues that this burden falls on the worker. We disagree.

Liability for payment of injuries compensable from the subsequent injury fund shall be apportioned in accordance with Section 52–2–11, the pertinent parts of which provide:

    Liability for payments for injuries compensable from the subsequent injury fund shall be apportioned between the employer or his insurance carrier and the fund according to the following schedule:

    \*     \*     \*     \*     \*     \*

    C. for injuries which occur on or after July 1, 1963, the employer or his insurance carrier shall pay all compensation benefits for the first eight weeks for the combined condition of disability or for death provided under the Workmen's Compensation Act and for any period

thereafter liability shall be apportioned by the judgment;

    *     *     *     *     *     *

E. all payments of compensation benefits shall be initially paid to the employee or his dependents entitled thereto by the employer or his insurance carrier and the sums paid for which the subsequent injury fund is liable shall be repaid to the employer or his insurance carrier making payments from the fund at the end of each quarter during which payment is made; provided, however, that no employer or insurance carrier shall be entitled to reimbursement from the subsequent injury fund for any payments so made until and unless he shall have made all contributions required pursuant to Section 4 [52–2–4 NMSA 1978] of this Subsequent Injury Act; and provided further that if the employer or his insurance carrier has settled his or its liability under the Workmen's Compensation Act with court approval, then the installment payments for which the fund is liable shall be paid direct to the person entitled thereto twice a month at intervals not more than 16 days apart[.]

■ Because all payments of compensation benefits are to be paid initially by the employer or its carrier, and because those parties are to be repaid from the Fund, we hold that the employer has the burden of proving apportionment between itself and the Fund. Once the worker has established his right to recovery, it makes little difference to him how he is paid. Because the employer or its carrier seeks repayment from the Fund, the burden rests with those parties to prove apportionment.

This brings us to the proper method of apportioning liability between the employer and the Fund.

## 2. Apportionment of Liability.

The trial court made the following findings of fact:

23. There is insufficient evidence to determine what disability would have resulted from the May 19, 1983, accident alone or what disability would have resulted had there been no pre-existing impairment.

24. There is insufficient evidence to determine what medicals relate to the December 6, 1978, December 16, 1980, February 19, 1982 or May 19, 983 [sic] accidents.

25. In most cases of this type it would be next to impossible for any party to secure evidence upon which a determination could be made on the issue in findings # 22 and # 23. It is not practical to require evidence to determine such issues.

Read in context and with the conclusion of law which follows, we believe that the trial court intended to refer to its finding of fact numbered 24 rather than 22, the latter concerning plaintiff's limitations.

The court concluded, as a matter of law, that:

4. The Workman's Compensation Act provides no direction with regard to division of payment of compensation benefits, medical expenses, vocational rehabilitation benefits and attorney fees where it is impossible from the evidence for the Court to apportion such, or a percentage thereof, to injuries and/or disability resulting, directly or indirectly, from the first accident (prior impairment), the second accident, and to determine what disability would have resulted from the second accident had there been no prior impairment. Therefore, the appropriate guideline for division is *"fundamental fairness"* to be determined in such a manner as to implement the purpose of the Subsequent Injury provision to encourage the employment of persons having permanent physical impairments. [Emphasis added.]

The Fund argues that "fundamental fairness" cannot be a substitute for lack of evidence and urges rejection of this as a standard. The employer, in its overlapping point, argues that it can be liable only for the increase in disability attributable to the second injury, but contends that, given Dr. Maron's undisputed testimony, there was nothing to apportion because no permanent impairment or disability was attributable to the May 1983 accidental injury alone. Therefore, the employer urges recovery of

100% payment from the Fund. We discuss the employer's argument of no apportionment under issue 3.

Section 52–2–11(F) provides:

> F. the term "liability shall be apportioned by the judgment" means a judicial determination of the extent of an employer's or his insurance carrier's liability under the Workmen's Compensation Act without regard to any further and additional liability imposed upon him or it by the Subsequent Injury Act and a further judicial determination of the benefits to which the employee is entitled to receive as compensation for the combined condition of disability. The employer or his insurance carrier shall receive credit for payments made under Subsections A, B and C of this section and shall be reimbursed by the fund for any payments made in excess of his or its apportioned liability.

■ "The Fund's liability is the difference between the compensation payable for the combined injury and the compensation which would have been payable as a result of the second injury alone." *Gutierrez v. City of Gallup*, 102 N.M. 647, 651, 699 P.2d 120, 124 (Ct.App.1984), *cert. quashed*, 102 N.M. 734, 700 P.2d 197 (1985). Stated another way, "[t]he amount of the Fund's contribution is usually the difference between the compensation that would be payable for the second injury alone and the compensation payable for the combined injuries." 2 A. Larson, *The Law of Workmen's Compensation*, § 59.34(a) at 10–486–87 (1983).

As Professor Larson points out, while the basic formula for calculating the Fund's liability is not complex, the practical task of sorting out how much of the final, combined injury was due to the second injury is one of great difficulty. 2 A. Larson, *supra*, at 10–500.

Assume the worker had a pre-existing impairment to his body due to back problem of 40%. As a result of the second injury, without regard to the pre-existing condition, disability was determined to be 20%. It was also determined that the worker was 100% disabled from the combined disabilities. Under those circumstances, the employer would be liable for 20% and the Fund liable for 80%.

Two caveats inhere in determining the existence and extent of the Fund's liability. We outline them below.

First, the employer may argue, as it does in the case before us, that there was no compensable claim for the second injury; therefore, the employer should incur no liability. If there is no *compensable* claim, there is no recovery either against the employer or the Fund. See element (b) under *Ballard* and NMSA 1978, Section 52–1–28.

Second, there may be cases where the subsequent injury was of such severity that it could have independently caused the permanent disability, without considering the contribution of the earlier injury. If the subsequent injury is of such magnitude, the Fund would not be liable. *Jussila v. Department of Labor & Industries*, 59 Wash.2d 772, 370 P.2d 582 (1962). *See* element (d) under *Ballard*.

How does this approach apply to the facts of the case before us? As noted, the trial court found that there was insufficient evidence to determine what disability would have resulted from the May 19, 1983 accident alone or what disability would have resulted had there been no pre-existing impairment. Faced with what was perceived as a dilemma, the trial court applied "fundamental fairness" in dividing the liability equally between the employer and the Fund. In *Gonzales v. Stanke-Brown & Associates, Inc.*, 98 N.M. 379, 648 P.2d 1192 (Ct.App.1982), we said that if specific guidance is lacking in a statute, then fundamental fairness to the parties should be the guideline. We were speaking there of proration of attorney's fees between two insurance carriers. While the problems in applying apportionment may appear insuperable, we believe that it can be done. Apportioning liability under the Subsequent Injury Act is similar to apportionments made where there are multiple accidents involving two or more employers or different insurance carriers for the same employer. *See Gonzales*.

The primary difficulty in the present case may be due in large measure to the fact that Dr. Maron testified that the May 19, 1983 accident, like the two prior ones in December 1980 and February 1982, when considered in isolation, resulted in no permanent impairment and was simply one more episode in the progression of a man with a serious back problem. In other words, like the two previous accidents, the May 19, 1983 accident amounted to an aggravation of the pre-existing condition and, absent that condition, should have been temporary in duration. This episode, how-

ever, happened to be the "final aggravation or final blow," according to Dr. Maron, which rendered plaintiff unable to perform tasks of his work. Dr. Maron said plaintiff's impairment now is greater than it was after the December 1978 accidental injury for which plaintiff was awarded 25% permanent partial disability. When asked the basis for his opinion, Dr. Maron said, "for the want of anything else to hang it on specifically, I'd say, yes, it's related to that [the May 19, 1983 accident]."

With those facts before us, the initial analysis must begin with the *Ballard* elements to determine whether the Subsequent Injury Act is applicable here.

(a) *A pre-existing permanent physical impairment.* There is no question as to this factor. The trial court found plaintiff suffered a permanent impairment of his lower back of 25% to 35%, and to his neck region of between 8 and 10%. This finding is not challenged.

(b) *A subsequent disability compensable under the Workmen's Compensation Act.* Plaintiff sustained the accidental injury of May 19, 1983, and this is compensable, even if it was temporary in duration without consideration of the pre-existing condition.

(c) *The subsequent disability must be permanent.* The medical proof is clear that the subsequent injury resulted in permanent disability only because of the pre-existing condition, otherwise the subsequent injury would have been temporary. This element is taken from Section 52–2–9 which provides, in part:

A. When an employee of an employer subject to the provisions of the Workmen's Compensation Act [52–1–1 to 52–1–69 NMSA 1978] who has a permanent physical impairment and who incurs a subsequent disability by accident arising out of and in the course of his employment, *which results in a permanent disability, that is materially and substantially greater than that which would have resulted from the subsequent injury alone,* then the employer or his insurance carrier shall pay awards of compensation for the combined condition of disability as provided in Section 11 [52–2–11 NMSA 1978] of this Subsequent Injury Act and all medical and related expenses provided by the Workmen's Compensation Act. [Emphasis added.]

Does the phrase "which results in a permanent disability, that is materially and substantially greater than that which would have resulted from the subsequent injury alone," mean that the subsequent injury must result in permanent disability without regard to the pre-existing condition? The answer is no. The Workmen's Compensation Act, to which reference is made in Section 52–2–9(A), has been interpreted as allowing recovery where the accidental injury aggravates a pre-existing condition, resulting in greater liability on the part of the employer than would be the case for the subsequent injury alone. *See Reynolds v. Ruidoso Racing Association, Inc.,* 365 P.2d 671. The Subsequent Injury Act limits the employer and its carrier's liability in such instances. *See* § 52–2–6(C); *Vaughn v. United Nuclear Corp.,* 98 N.M. 481, 650 P.2d 3 (Ct.App.1982), *overruled on other grounds, Fierro v. Stanley's Hardware,* 24 SBB 1022 (Ct.App.), *cert. granted,* 24 SBB 1093 (1985). Therefore, we believe it consistent to hold that under the circumstances, such as the case here, where the subsequent injury alone may not result in a permanent disability, if the subsequent injury in combination with the pre-existing permanent physical impairment does, then element (c) has been satisfied. That is the case here.

(d) *The subsequent injury must be materially and substantially greater than that which would have resulted from the subsequent injury alone.* Dr. Maron testified that it was, and the trial court so found. This finding is not challenged.

Plaintiff established these elements and, therefore, satisfied his burden. The burden then fell on the employer to establish the apportionment. The trial court said there was insufficient evidence to make the determination. Did the employer fail to meet its burden?

While the medical witness could not assign a percentage to the May 19, 1983 accident, we do not believe that this was fatal. It is clear from Dr. Maron's testimony that only temporary disability, like the two previous accidents, would have resulted but for plaintiff's pre-existing problem back. Therefore, the trial court could assign a percentage to this disability. The trial court found plaintiff totally and permanently disabled; therefore, the Fund's apportioned liability would be the differ-

ence between that 100% and the amount assigned to the employer. The apportionment so determined would apply to medical-related benefits and to attorney's fees and costs.

We, therefore, set aside the apportionment made, and remand for apportionment in accordance with this opinion. Ordinarily we would remand with directions for the trial court to make new or additional findings of fact and conclusions of law on the issue of apportionment; however, the judge who tried this case is no longer on the bench. In this circumstance, we remand for a new trial on the issue of apportionment. *Curbello v. Vaughn*, 78 N.M. 489, 432 P.2d 845 (1967); *Louis Lyster, General Contractor, Inc. v. Town of Las Vegas*, 75 N.M. 427, 405 P.2d 665 (1965); *Heron v. Garcia*, 51 N.M. 1, 176 P.2d 680 (1947); *Apodaca v. Lueras*, 34 N.M. 121, 278 P. 197 (1929); *compare Sears v. Board of Trustees of Anton Chico Land Grant*, 83 N.M. 372, 492 P.2d 643 (1971). We leave to the new judge's discretion how to conduct the new trial, that is, whether to review the taped testimony, require the witness or witnesses to appear and testify, accept additional evidence, etc.

### 3. Did the trial court err in failing to find no permanent increase in plaintiff's disability attributable to the subsequent injury alone.

Under this point, the employer argues that the trial court should have found that plaintiff suffered no permanent increase in his disability attributable to the subsequent injury alone, and that the entire increase should be paid by the Fund.

The employer states:

Given Dr. Maron's undisputed testimony, the only possible finding was that the Plaintiff suffered no permanent impairment or disability attributable to the accident in May of 1983 alone, and that the entire increase in Plaintiff's disability from 25% to 100% was attributable to the aggravation of Plaintiff's pre-existing condition, for which the Fund is ultimately liable.

We disagree. Based on Dr. Maron's testimony, the trial court could find that plaintiff sustained a temporary total disability because similar findings were made with respect to the December 1980 and February 1982 accidental injuries. Neither of those accidents resulted in permanent disability, but both were compensable. The employer's point has no merit.

### 4. Attorney's fees.

The trial court found, in its finding of fact that:

29. A reasonable fee, considering offers made, the chilling effects of insufficient fees, the time and effort of Smith's counsel, the extent to which the issues were litigated, the novelty and complexity of the issues, the normal fees, the experience, skill and reputation of Smith's attorney, the relative success of Smith, and the amount involved is $8500.00 plus sales tax.

Plaintiff claims the trial court abused its discretion by failing to consider fully all the necessary factors in fixing attorney's fees. He claims that the amount is unreasonable based on the "Fryar factors." *Fryar v. Johnsen*, 93 N.M. 485, 601 P.2d 718 (1979) and NMSA 1978, § 52-1-54(D). In addition to these factors, it is proper for the trial court to now "consider the amount of the compensation award, and to use a percentage of that award as one factor * * *." *Woodson v. Phillips Petroleum Co.*, 102 N.M. 333, 338, 695 P.2d 483, 488 (1985).

The award of attorney's fees rests within the discretion of the trial court. *Manzanares v. Lerner's Inc.*, 102 N.M. 391, 696 P.2d 479 (1985). We will not disturb that decision absent a showing of abuse. The fee awarded falls within the range of percentages noted in *Woodson*. The supreme court said these ranges, 6% to "somewhat" less than 25%, should serve as useful guidelines except in extraordinary cases. Without going through each *Fryar* factor, suffice it to say that this was not an extraordinary case as far as plaintiff was concerned. We are unable to say the trial court abused its discretion in awarding $8,500 for attorney's fees.

### CONCLUSION

After the briefs had been filed in this case, the Fund filed a motion for summary reversal based on our recent opinion in *Fierro*, where we held that a certificate of pre-existing impairment must be filed before the second injury. We said that rule would apply to any case currently pending in the appellate courts in which the issue was preserved.

We denied the Fund's motion. While the certificate of pre-existing impairment was

filed after the second injury, the Fund's objection at trial contended only that the certificate was defective because it failed to set forth a description, percentage, and cause of the prior condition. The Fund conceded that, under the law at that time, *Vaughn,* the certificate was timely filed. The issue was not preserved.

We reverse and remand for new trial, in accordance with this opinion, on the issue of apportionment between the employer and the Fund. Since that issue does not affect plaintiff whose award is not affected, he can receive his benefits when this decision becomes final. Plaintiff is awarded $2,000, which shall be paid by the Fund, for successfully defending against the Fund's claim. No costs are awarded.

IT IS SO ORDERED.

DONNELLY, C.J., and WOOD, J., concur.