728 P.2d 483

**Fred A. ROMERO, Plaintiff-Appellant,**

v.

**COTTON BUTANE CO., INC., and Northwestern National Casualty Company, its insurer, Defendants,**

**and**

**Vicente B. Jasso, Superintendent of Insurance of the State of New Mexico, and the New Mexico Subsequent Injury Fund, Defendants-Appellees.**

**William HATHAWAY, Plaintiff-Appellant,**

v.

**The ZIA COMPANY, United States Fidelity & Guaranty Company, insurer, Defendants,**

**and**

**Vicente B. Jasso, Superintendent of Insurance of the State of New Mexico, and the New Mexico Subsequent Injury Fund, Defendants-Appellees.**

**Nos. 9082, 9163.**

Court of Appeals of New Mexico.

Oct. 28, 1986.

John P. Faure, Santa Fe, for plaintiffs-appellants.

Marshall G. Martin, Orlando Lucero, Poole, Tinnin & Martin, P.C., Albuquerque, for defendants-appellees.

## OPINION

FRUMAN, Judge.

This consolidated appeal from the granting of motions for summary judgment in favor of the New Mexico Subsequent Injury Fund raises a question of first impression with regard to the Subsequent Injury Act, NMSA 1978, Sections 52–2–1 through –13.[1] That question is: may a worker, who brings a workmen's compensation action against his employer and its insurer and who also alleges his right to payment from the Subsequent Injury Fund, continue his action against the Fund following a settle-

---

**1.** All references to the Subsequent Injury Act are to its provisions prior to being repealed in part and reenacted in part by 1986 N.M. Laws, ch. 22, §§ 45–52, 102 and 1986 N.M. Laws, ch. 57, §§ 1–3.

ment with the employer and insurer? We reverse and remand.

### PROCEEDINGS

Each worker filed an amended complaint for workmen's compensation benefits from his respective employer, the employer's compensation carrier, and the Fund. *See* § 52–2–5(A). Each worker alleged that, as a result of his prior injury and disability, his present disability is materially and substantially greater than that which would have resulted solely from his second injury, and thus he was entitled to contributions from the Fund.

Each worker subsequently entered into a stipulation with his employer and its compensation carrier. Each stipulation provided for the settlement of the claims and liabilities of those parties by the payment of workmen's compensation benefits for the injury that arose out of a specified second employment accident. Each stipulation also provided that any rights that the worker may have against the Fund were not to be prejudiced or diminished. The Fund was not a party to and did not sign either stipulation.

Each stipulation for a lump-sum settlement was approved and adopted by the trial court by the entry of judgment. Each judgment also barred any further action by the employer and its insurance carrier against the Superintendent of Insurance and the Fund.

The Superintendent and the Fund then filed a motion for summary judgment against each worker. The motions sought the dismissal of the amended complaints on the theory that the Fund's "liability is derivative from that of the employer and no action can be maintained solely against [the Fund] by [the workmen.]" The trial court found that no issues of material fact existed and that summary judgment would be appropriate as a matter of law. It then granted each motion. Both workers appeal from these orders.

### THE WORKERS' POSITION

The workers maintain that the Subsequent Injury Act provides a cause of action against the Fund that is separate and distinct from a cause of action against the employer. In support of this contention, the workers distinguish the Fund's liability from that of the employer. In reliance on this contention, the workers reason that in settling their claims against their employers they did not affect their own rights against the Fund. They also maintain that the Fund should be estopped from denying its liability because it now takes a position inconsistent with the position taken during the settlement process. As this last contention was not presented to the trial court by either worker, it will not be considered for the first time on appeal. *Wolfley v. Real Estate Commission,* 100 N.M. 187, 668 P.2d 303 (1983). The remaining arguments will be discussed below.

### THE FUND'S POSITION

The Fund maintains that the Subsequent Injury Act does not permit an injured worker to recover additional compensation benefits from the Fund once he has settled for a lump-sum compensation payment with his employer. This premise is based upon the Fund's interpretation of the Act and upon various appellate decisions. Our interpretation of the Act will follow our discussion of those decisions.

The Fund has referred to various out-of-state decisions for the propositions that the Act only establishes a means to reimburse an employer rather than to pay a worker directly and that the Fund's liability derives only from the employer's liability. The Fund's argument, in effect, is that the Act creates limited rights against the Fund and the workers' claim is not among those rights. We note that *Arduser v. Daniel International Corp.,* 7 Kan.App.2d 225, 640 P.2d 329 (1982), does support these propositions in a factual setting similar to ours. The court determined that the statutory language regarding payments from the fund to the worker was procedural only and did not disclose any right to maintain an action directly against that fund. Thus, the fund's liability was dependent upon and derived from the employer's liability.

The Fund next cites *Cabe v. Popham,* 444 S.W.2d 910 (Ky.1969), which we find distinguishable on several points. The worker first received an award that, in part, ordered the Special Fund to reimburse the employer for a portion of the award. The worker then sued a third-party tortfeasor and subsequently settled that suit. The settlement relieved the employer from further liability for compensation benefits under the initial award and gave the worker an amount that exceeded the amount still owed him under the initial award. The worker then sought direct recovery from the Special Fund for the amount which the fund had previously been ordered to reimburse to the employer. The court held that since the employer's liability had been discharged by the third-party settlement and the fund's liability under the initial award was only for reimbursement to the employer, the fund could not be held liable to the worker.

While *Cabe v. Popham* applied the "derivative liability" principle, Kentucky also requires, by statute, that compensation awarded against the Special Fund is to be paid directly by the employer. More commonly, however, the employer is required to pay only for the disability attributable to the second injury, and the employee must apply directly to a second or subsequent injury fund for his additional compensation. *See* 2 A. Larson, *The Law of Workmen's Compensation,* § 59.31(f) (1983).

From *Levi v. Special Indemnity Fund,* 389 P.2d 620 (Okla.1964), the Fund again extracts the proposition that a second injury fund's liability derives from the employer's liability and that a suit solely against the fund cannot be maintained. The claimant there sought to reopen a prior award from the fund because of a change in his condition, and the court held that he must first obtain a determination of greater disability against his employer before the fund could be held liable for an additional amount. The court also found that a settlement with the employer precluded the claimant from seeking a determination of additional primary liability on the part of the employer. Thus the settlement, in ef-

fect, precluded an additional award against the fund. The workers in our case, however, are not seeking to increase a prior award of compensation from the Fund. *See* NMSA 1978, § 52–1–56.

The Fund then cites *White v. Weinberger Builders, Inc.,* 397 Mich. 23, 242 N.W.2d 427 (1976), as further support of its propositions. Regardless of the merits of that case, the Michigan Supreme Court, in *Clark v. Cadillac Gage,* 416 Mich. 38, 94, 330 N.W.2d 376, 379 (1982), limited *White's* "derivative liability" language to that case only and further said: "The fact that the statute provides fund liability only under circumstances wherein it provides employer liability does not convert employer liability into the source of the fund's liability. The only source of liability is the statute."

The concept of "derivative liability" in Michigan has further limitations. In *Truss v. Marian Manor Nursing Home, Inc.,* 327 N.W.2d 923 (Mich.App.1983), the court observed that the principle does not control when the fund's interests differ substantially from that of the employer. The court reaffirmed the rule that the fund's right to appeal is independent of an employer's right to appeal or admit liability.

In addition to the distinctions noted between the Fund's authorities and the circumstances of this case, one additional, primary distinction pertains—none of those authorities construe the New Mexico Subsequent Injury Act. While the decisions from other jurisdictions have been helpful in identifying the issue and suggesting an approach, our own statutory language and cases require a different result.

## SUBSEQUENT INJURY ACT

The legislative intent of the Act has been set forth in *Fierro v. Stanley's Hardware,* 104 N.M. 50, 716 P.2d 241 (1986) and in *Gutierrez v. City of Gallup,* 102 N.M. 647, 699 P.2d 120 (Ct.App.1984), *cert. quashed, Jasso v. City of Gallup,* 102 N.M. 734, 700 P.2d 197 (1985), and its legislative history has been discussed in *Vaughn v. United Nuclear Corporation,* 98 N.M. 481, 650 P.2d 3 (Ct.App.), *cert. quashed, Jasso v.*

*Vaughn,* 98 N.M. 478, 649 P.2d 1391 (1982). Neither will be reiterated here. The basic nature of the Act is to "make the employer liable for only the amount of disability attributable to the second injury, while the Fund pays the difference between that amount and the total amount to which the worker is entitled as a result of both of his injuries." *Gutierrez v. City of Gallup,* 102 N.M. at 650, 699 P.2d at 123.

We interpret the several provisions of the Act as it applies to this appeal in the following manner (the emphasis is added):

1. Section 52–2–2(C): the legislative declaration that the Act makes "a logical and equitable *adjustment* of employer's liability under the Workmen's Compensation Act[.]" The word "adjustment" is commonly understood as meaning a determination and apportionment of an amount due which, in the context of this case, would be the amount of liability due from an employer and from the Fund. *See Black's Law Dictionary* 40 (rev. 5th ed. 1979); *cf. Ditmars—31' Street Development Corp. v. Punia,* 17 A.D.2d 357, 235 N.Y.S.2d 796 (1962).

2. Section 52–2–5(A): the worker, when he is not receiving compensation benefits, may sue his employer and its compensation carrier and may also allege "his *right* to payment from the fund[.]" The normal, customary meaning of "right" is an ascertainable and legally enforceable claim. *Cf. United States v. Byrum,* 408 U.S. 125, 92 S.Ct. 2382, 33 L.Ed.2d 238 (1972).

3. Section 52–2–7: a judgment may authorize lump-sum payments from the fund to reimburse the employer or its carrier "for payments made in excess of his or its *apportioned liability* [.]" More importantly, this section shall not prevent the employer or its carrier "from effecting a lump-sum settlement of his or its liability under the Workmen's Compensation Act[.]" The plain meaning of an "apportioned liability" denotes a determination of relative liabilities. *Cf. Thomas v. Henson,* 102 N.M. 417, 696 P.2d 1010 (Ct.App.1984), *aff'd in part and rev'd in part on different grounds,* 102 N.M. 326, 695 P.2d 476

(1985); *see also Armstrong v. Industrial Electric and Equipment Service,* 97 N.M. 272, 639 P.2d 81 (Ct.App.1981). This meaning also applies to the emphasized words in the next two paragraphs.

4. Section 52–2–11: "*Liability* for payments compensable from the subsequent injury fund shall be *apportioned* between the employer or his insurance carrier and the fund" according to the applicable schedule set forth in this section as established by a judgment. At subsection (E) we find that if the employer or its carrier settles "his or its liability under the Workmen's Compensation Act with court approval, then the installment payments for which the fund is liable shall be paid direct to the person entitled thereto" as specified.

5. Section 52–2–11(F): "the term '*liability shall be apportioned* by the judgment' means": (a) "a judicial determination of the extent of an employer's or his insurance carrier's liability under the Workmen's Compensation Act without regard to any further and additional liability imposed upon him or it by the Subsequent Injury Act and" (b) "a further judicial determination of the benefits to which the employee is entitled to receive as compensation for the combined condition of disability."

 In our view, the import of these provisions is that the liability of the Fund to a subsequently-injured worker is coexistent with, rather than derivative from, the liability of the employer and its carrier and that these coexistent liabilities may be addressed separately in settlement. *Cf.* Section 52–2–11(C) (where the employer and its carrier have sole liability to pay all compensation benefits for the first eight weeks for the combined condition of disability or for death). Consequently, a court-approved lump-sum settlement between the worker and his employer or its carrier does not preclude a further adjudication of the Fund's liability to the workman. *See Clark v. Cadillac Gage; Grant v. Neal,* 381 S.W.2d 838 (Mo.1964). A contrary view would have us render the permissive settlement language of Sections 52–2–7 and 52–2–11(E) meaningless. Such a construc-

tion would have us read something into the statutes that is not there, and this we will not do. *Redding v. City of Truth or Consequences*, 102 N.M. 226, 693 P.2d 594 (Ct. App.1984).

 Given the statutory requirement for a judicial determination of the coexistent, relative liabilities of an employer and the Fund, we hold that the potential liability of the Fund does not terminate upon a settlement between the worker and his employer, unless, of course, there has been a judicial determination that the Fund is not liable for any portion of the subsequent injury, *see* § 52–2–11(F), or unless the settlement releases the liability of the Fund.

We recognize that in *Smith v. Trailways, Inc.*, 103 N.M. 741, 745, 713 P.2d 557, 561 (Ct.App.1986), this court held that the employer:

> * * * has the burden of proving apportionment between itself and the Fund. Once the worker has established his right to recovery, it makes little difference to him how he is paid. Because the employer or its carrier seeks repayment from the Fund, the burden rests with those parties to prove apportionment.

Since the fact of settlement was not an issue in *Smith v. Trailways, Inc.*, our allocation of the burden upon the employer does not apply here, especially since the employers and their carriers are not seeking repayment from the Fund. The party alleging the affirmative of an issue has the burden of proving that issue. *Smith v. Trailways, Inc.* Therefore, since the workers are the parties who are alleging the affirmative, i.e., the liability of the Fund directly to themselves, they will have the burden of proving that issue.

### REMAND

Upon our remand of these actions, each worker will have the initial burden of proving the several requisites for his eligibility for relief under the Subsequent Injury Act as set forth in *Ballard v. Southwest Potash Corp.*, 80 N.M. 10, 450 P.2d 448 (Ct.App.1969). In addition, each appellant will have the burden of establishing the difference between the compensation payable for his combined injury and the compensation that would have been payable as a result of the second injury alone. That difference will be the measure of the Fund's liability. *See Smith v. Trailways, Inc.; Gutierrez v. City of Gallup.* At that hearing, the amount previously awarded by the court-approved settlement between each worker and his employer need not equate to the amount of compensation, if any, that is due as a result of the second injury alone. *See Clark v. Cadillac Gage.*

Therefore, these causes are remanded to the trial court to set aside both orders granting summary judgment in favor of the Fund and for further proceedings consistent with this opinion. Attorney fees are not being awarded at this time. *See Phelps Dodge Corp. v. Guerra*, 92 N.M. 47, 582 P.2d 819 (1978).

IT IS SO ORDERED.

ALARID and MINZNER, JJ., concur.