727 P.2d 77

**Mary ARCHULETA, Plaintiff-Appellee,**

**v.**

**SAFEWAY STORES, INC., Employer and Insurer, Defendant-Appellant.**

**Nos. 8320, 8360.**

Court of Appeals of New Mexico.

Sept. 9, 1986.

W. Mark Mowery, Rodey, Dickason, Sloan, Akin & Robb, P.A., Santa Fe, for defendant-appellant.

Dennis P. Murphy, Montoya, Murphy, Kauffman & Garcia, Santa Fe, for plaintiff-appellee.

## OPINION

BIVINS, Judge.

Defendant appeals from a judgment in this worker's compensation action awarding plaintiff total disability for an injury to her right lower extremity. Three issues are raised: (1) whether the trial court's finding of total disability resulting solely from an injury to the leg is supported by substantial evidence; (2) whether the Workmen's Compensation Act authorizes an award of total disability benefits in cases involving an injury solely to a scheduled member, which issue asks this court to

re-examine cases holding it does; and (3) whether the trial court abused its discretion and exceeded its authority in the award of attorney fees and court costs.

While working for defendant as a meat wrapper, plaintiff sustained an accidental injury on December 14, 1982, when a conveyor belt fell, causing a severe and crushing injury to her right leg at the calf. Plaintiff sought total disability on three alternative grounds: first, based on an injury to her back resulting from the leg injury; second, separate and distinct injuries in the form of back injury and/or psychological disorder; or, third, the leg injury alone prevented plaintiff from performing the work she was doing when injured or any other work for which she is fit. The trial court rejected the first two approaches, but found total disability on the basis of the leg injury itself. It awarded plaintiff attorney fees of $24,727.50 for two attorneys and court costs of $6,990.95.

### 1. *Sufficiency of the Evidence*

NMSA 1978, Section 52–1–28(B) provides: In all cases where the defendants deny that an alleged disability is a natural and direct result of the accident, the workman must establish that causal connection as a medical probability by expert medical testimony. No award of compensation shall be based on speculation or on expert testimony that as a medical possibility the causal connection exists.

Since defendant denied causal connection, plaintiff had the burden of proving that fact as a medical probability by expert medical testimony. Failure to do so would have precluded recovery. *Gallegos v. Kennedy*, 79 N.M. 590, 446 P.2d 642 (1968). Defendant argues that plaintiff failed to meet this burden, and, at best, she only established an injury or impairment as a result of the accident, but not a disability.

■ While conceding that a worker may testify as to the extent of his disability, defendant contends he may do so only after "the fact of disability, arising as a natural and direct result of the accident, is first established by expert medical testimony."

*See Salazar v. Pioneer Paving, Inc.*, 99 N.M. 744, 663 P.2d 1201 (Ct.App.1983). Since Section 52–1–28 refers specifically to "disability," which has a precise definition which relates to the worker's ability to work, then, according to defendant, the burden of proving causal connection can only be met by showing, through expert medical testimony, a decreased capacity to perform work. With this as its premise, defendant then proceeds to demonstrate that the medical evidence failed to establish the requisite causal connection.

Section 52–1–28, however, does not require such an exacting burden. This section only requires a claimant to prove, by a reasonable medical probability, the causal connection between the accident and the disability. *Garcia v. Genuine Parts Co.*, 90 N.M. 124, 560 P.2d 545 (Ct.App.1977) (construing NMSA 1953, § 59–10–13.3(B) (2d Repl.Vol. 9, pt. 1) now codified as § 52–1–28(B)). This section does not require the claimant to prove disability by a reasonable medical certainty. *Id.* As we stated in *Garcia:* " 'Disability' is defined in terms of ability to perform work and requires consideration of the claimant's age, education, training, physical capacity, mental capacity and work experience. * * * By statutory definition, more than physical condition is involved in determining 'disability' ". *Id.* at 127, 560 P.2d at 548 (citations omitted). Therefore, because defendant misconstrues Section 52–1–28, we reject its argument.

■ We also hold that substantial evidence supports the trial court's finding of total disability. In order to receive total disability compensation, a claimant must make a two-part showing. First, he must show that "by reason of an injury arising out of, and in the course of, his employment, [he] is wholly unable to perform the usual tasks in the work he was performing at the time of his injury * * *." NMSA 1978, § 52–1–24. Second, he must show that "[he] is wholly unable to perform any work for which he is fitted by age, education, training, general physical and men-

tal capacity and previous work experience."
*Id.*

■ As to the first part, the trial court found that the job of meat wrapper required plaintiff "to continuously stand for most of an eight (8) hour workday and further requires repeated stooping, bending, reaching and lifting of meat or trays of meat as well as constant exposure to cold temperatures." It also found that as a result of the injury to her right leg, plaintiff was "limited in her ability to stand for long periods of time, to repeatedly stoop, bend, reach or lift and to withstand cold temperatures," and, therefore, "is unable to perform the regular and normal duties of a meat wrapper."

Dr. Steven Weiner, an orthopedic surgeon, testified that he treated plaintiff for a crush injury to her leg. When asked whether plaintiff has a "limitation" returning to her occupation as a meat wrapper, the doctor replied, "Yes." The doctor was then asked whether plaintiff was totally disabled to perform her occupation, given her inability to work in a cold environment, her standing limitation of three hours out of an eight-hour day, and her ability only to lift a fifty-nine-pound maximum. The doctor replied, "Based on her description of the job to me, yes." Thus, the court's first finding was supported by substantial evidence.

As to the second prong of total disability, the trial court found that plaintiff, aged fifty-four with an eighth-grade education, had no previous work experience except as a meat wrapper, a job she occupied for thirty-five years. It further found that she possessed little capacity for "re-education or re-training" and had no transferable work skills or other attributes that would render her employable in any field other than as a meat wrapper. These findings are sufficient to satisfy this prong.

Applying the standard of appellate review, *see Sanchez v. Homestake Mining Co.*, 102 N.M. 473, 697 P.2d 156 (Ct.App. 1985), we hold that substantial evidence supports the finding of total disability.

2. *Does the Workmen's Compensation Act authorize total disability in cases involving injuries solely to a scheduled member?*

Defendant correctly notes that prior to this court's decision in *Witcher v. Capitan Drilling Co.*, 84 N.M. 369, 503 P.2d 652 (Ct.App.1972), the scheduled member section in NMSA 1978, Section 52–1–43 (then codified as NMSA 1953, § 59–10–18.4 (Repl.Vol. 9, pt. 2, Supp.1971)), was exclusive, unless there was evidence of separate and distinct impairment to other parts of the body in addition to the injury to a scheduled member. *See Montoya v. Sanchez*, 79 N.M. 564, 446 P.2d 212 (1968). *Witcher* held, however, that where an injury to a scheduled member results in total disability, the scheduled member section does not prohibit compensation based on such total disability.

Claiming that the reasoning in *Witcher* is seriously flawed, defendant urges this court to re-examine its holding and to overrule that decision. Even if we were otherwise inclined to do so, that would not be possible since the supreme court adopted the same rule in *American Tank & Steel Corp. v. Thompson*, 90 N.M. 513, 565 P.2d 1030 (1977). This court is governed by the precedents of the supreme court. *Alexander v. Delgado*, 84 N.M. 717, 507 P.2d 778 (1973).

3. *Attorney Fees and Costs*

(a) Defendant's claim of excessive and unauthorized attorney fees raises the questions of whether an award may be made to a compensation claimant for the services of two attorneys and whether the award should include time spent in pursuit of unsuccessful claims.

■ In this case, plaintiff had two attorneys representing her throughout the proceedings. The trial court's findings reflect that one attorney expended 166.7 hours in the case while the other expended 125.5 hours. The trial court's award of $24,-727.50 is for two attorneys. We hold that this award for double representation was

impermissible under NMSA 1978, Section 52-1-54(D) which speaks of "attorney" in the singular. While there is no restriction on the number of attorneys a worker may engage, a reasonable fee will be allowed only for single representation.

The trial court found that "the only issue which was truly contested was the nature and extent of the Plaintiff's disability," and, further, that "[t]he factual and legal issues in this case were within the normal range of complexity * * *." As noted earlier, plaintiff attempted to circumvent the restrictions of the scheduled member section by claiming separate and distinct injuries in the form of a back injury and/or psychological disorder. The trial court rejected these claims and found, as part of the attorney fees proceeding, that the claim of disability based on psychological disability had little or no chance of succeeding. At the hearing, the trial court characterized this claim as "frivolous." Nevertheless, the trial court went on to find that it was

> unwilling to reduce the award of attorneys fees based on it's [sic] disapproval of the "psychological disability" because the court senses that this claim may foreshadow a trend in workmens [sic] compensation law and that the attorneys ought not to be punished for what may be a legitimate advancement of the frontiers of recovery for workers.

■ While the time and effort expended by the worker's attorney are to be considered, it is not always dispositive of the amount of fees to be awarded. *Fryar v. Johnsen*, 93 N.M. 485, 601 P.2d 718 (1979) (*Fryar I*). The cases discussing time and effort relate, however, to the results achieved, not to unsuccessful claims pursued. *See, e.g., Manzanares v. Lerner's, Inc.*, 102 N.M. 391, 696 P.2d 479 (1985) (award held inadequate where time and effort not considered even though issues simple); *Maes v. John C. Cornell, Inc.*, 86 N.M. 393, 524 P.2d 1009 (Ct.App.1974) (fee award upheld where little effort produced substantial results). Additionally, attorney fees have been denied where plaintiff has been successful on appeal but without increasing his benefits. *See, e.g., Escobedo v. Agriculture Products Co.*, 86 N.M. 466, 525 P.2d 393 (Ct.App.1974).

■ We, therefore, hold the trial court erred in considering time and effort expended in pursuit of unsuccessful claims.

■ Defendant also challenges the award of attorney fees as excessive. Given the fact that it involved the services of two attorneys and considered an unsuccessful claim, we agree. We also observe that the trial court found that the evidence presented to resolve the legal issues was "excessive and, in some instances, cumulative." Further, there appear to be overlaps and inconsistencies in the time records of plaintiff's attorneys.

The present value of the award is $106,102. We believe a fee of $12,500 proper in this case. This amounts to almost twelve percent of the present value of the award and falls approximately midway in the percentages set out in *Woodson v. Phillips Petroleum Co.*, 102 N.M. 333, 695 P.2d 483 (1985). There was only one issue and it fell within the normal range of complexity. Plaintiff should have been able to present her case in one to one and one-half days; the trial took three and one-half days. Considering the *Fryar* factors, we hold the fee awarded excessive by $12,227.50. If, within ten days following this decision, plaintiff files a remittitur with the clerk of this court in the sum of $12,227.50 from the award of $24,727.50, the attorney fee award will be affirmed for $12,500, plus tax from the date of judgment below. If the remittitur is not filed, then the judgment will be reversed, and the cause remanded for new findings and conclusions consistent with this opinion. No new evidence is to be considered. *See Johnsen v. Fryar*, 96 N.M. 323, 630 P.2d 275 (Ct.App. 1980) (*Fryar II*).

(b) The trial court awarded plaintiff costs of $6,990.95 which included:

| | |
|---|---|
| Dr. Foote | $1,789.09 |
| Dr. Rapoport | 786.57 |
| Dr. Hardy | 1,970.00 |

| Dr. Kosicki | $ 530.00 |
| Barbara Jarvis | 261.56 |
| "Copying charges" | 1,138.60 |

The matter of assessing costs lies within the discretion of the trial court and will not be interfered with absent abuse of that discretion. *Hales v. Van Cleave*, 78 N.M. 181, 429 P.2d 379 (Ct.App.1967). Defendant claims abuse of discretion in awarding expert witness fees, absent a finding that more than one expert was reasonably necessary and that the additional expert testimony was not cumulative. NMSA 1978, § 38-6-4 (Cum.Supp.1986).

■ Plaintiff correctly points out that NMSA 1978, Section 52-1-35(B) (Cum. Supp.1985) applies, notwithstanding the provisions of Section 38-6-4. Section 52-1-35(B) provides:

No cost shall be charged, taxed or collected by the clerk except fees for witnesses who testify under subpoena. These witnesses shall be allowed the same fee for attendance and mileage as is fixed by law in other civil actions. Notwithstanding the provisions concerning expert witness fees as provided in Section 38-6-4 NMSA 1978, the court may order the payment of reasonable fees for any expert witnesses whose examination of the claimant, report or trial attendance is determined by the court to be reasonably necessary in the trial of the case.

From a reading of the above section, it is clear that the trial court must still make a determination that the examination of plaintiff, report or trial attendance was reasonably necessary in the trial of the case. Defendant submitted requested findings sufficiently challenging the necessity of the above expert witnesses; however, the trial court made no findings.

At the conclusion of the hearing on attorney fees and costs, the trial court said:

Additionally, the Court grants costs to the plaintiffs [sic] as requested. Again, this is in line with my own view that I am uncertain, in my own mind, as to the value of the last issue offered and that includes some of the testimony which was offered by Drs. Foote and Rapoport. Those costs are granted as well.

Counsel inquired about findings and the trial court said, "[y]ou may submit them." The hearing was then adjourned.

We hold that Section 52-1-35(B) contemplates a finding as to reasonable necessity before expert fees may be awarded; otherwise, this court lacks a sufficient basis to review the trial court's decision. *See* NMSA 1978, Civ.P.R. 52(B) (Repl.Pamp. 1980); *Mora v. Martinez*, 80 N.M. 88, 451 P.2d 992 (1969). The oral remarks of the trial court do not constitute a decision. *Getz v. Equitable Life Assurance Society of the United States*, 90 N.M. 195, 561 P.2d 468 (1977).

We, therefore, remand the item of expert witness fees for the requisite determination of reasonable necessity by the trial court.

■ Defendant also challenges the cost item for "copying charges" of $1,138.60. We agree. There is no authorization for this item, and it should be deleted.

*Conclusion*

The award of total disability is affirmed. The case is remanded for findings on expert witness fees consistent with this opinion and attorney fees should plaintiff not accept the remittitur.

■ Plaintiff asks for attorney fees on appeal. She prevailed on the disability issue but lost on attorney fees and costs. Section 52-1-54(D) provides that where compensation shall be refused and the claimant thereafter collects compensation through court proceedings in an amount in excess of any offer made thirty days before trial, then attorney fees shall be fixed in an amount the court deems reasonable. This applies to appeals. If attorney fees are considered as "compensation," then plaintiff would not be entitled to a fee on appeal because she lost on that issue and on costs. On the other hand, if attorney fees do not constitute "compensation," then plaintiff should be entitled to a rea-

sonable fee on appeal for preserving her award of total disability.

While medical expenses are "compensation" for the purpose of allowing attorney fees, *see Schiller v. Southwest Air Rangers, Inc.*, 87 N.M. 476, 535 P.2d 1327 (1975), attorney fees have not been expressly so declared. *But see Manzanares v. Lerner's, Inc.* (disallowing court cost on appeal since the only issue involved attorney fees, but allowing attorney fees). *Manzanares* does not cite any authority for the allowance of attorney fees on appeal when the only issue was attorney fees, nor does it contain any discussion. This court in *Holloway v. New Mexico Office Furniture*, 99 N.M. 525, 660 P.2d 615 (Ct.App.1983), held that free process would not be allowed on appeal where the only issue involved attorney fees, and required the claimant's attorney to pay appellate costs. *Manzanares* relied on *Holloway* in disallowing costs on appeal. Because *Manzanares* does not discuss the question of whether attorney fees constitute compensation, we do not believe the supreme court intended to hold that it does. Moreover, we find nothing in the Workmen's Compensation Act to suggest that attorney fees should be considered as compensation.

Therefore, by eliminating attorney fees as well as costs, the issues plaintiff lost on appeal, and focusing only on the disability award as compensation, as to which plaintiff prevailed, we see no reason plaintiff should not be awarded attorney fees for successfully defending that award. In *Lauderdale v. Hydro Conduit Corp.*, 89 N.M. 579, 585, 555 P.2d 700, 706 (Ct.App. 1976), this court said: "Attorney fees on appeal are authorized if the employer refuses to pay compensation and the claimant thereafter collects compensation in the trial court. In this situation, attorney fees may be awarded against the employer, both in the trial court and on appeal."

Here, defendant did refuse to pay compensation for total disability and plaintiff thereafter collected compensation in the trial court, and she sustained this award on appeal. Thus, she is entitled to attorney fees on appeal. We award her $2,000 attorney fees for her success.

IT IS SO ORDERED.

HENDLEY, C.J., and DONNELLY, J., concur.