731 P.2d 973

Orlando DURAN, Plaintiff-Appellee,

v.

XEROX CORPORATION, employer,
and Employees Insurance Company
of Wausau, insurer, Defendants,

and

Vicente B. Jasso, Superintendent of In-
surance of the State of New Mexico,
and the New Mexico Subsequent Injury
Fund, Defendants-Appellants.

and

XEROX CORPORATION, employer, and
Employers Insurance Company of
Wausau, insurer, Third-Party Plain-
tiffs-Appellees,

v.

Vicente B. JASSO, Superintendent of
Insurance of the State of New Mexico,
and the New Mexico Subsequent Injury
Fund, Third-Party Defendants-Appel-
lants.

No. 9240.

Court of Appeals of New Mexico.

Dec. 2, 1986.

Certiorari Denied Jan. 26, 1987.

Gregory D. Huffaker, Jr., Poole, Tinnin & Martin, P.C., Albuquerque, for defendants-appellants New Mexico Subsequent Injury Fund and Superintendent of Insurance for the State of New Mexico.

James A. Mungle, James A. Mungle, P.A., Albuquerque, for plaintiff-appellee Orlando Duran.

Mark B. Thompson, III, Douglas R. Vadnais, Modrall, Sperling, Roehl, Harris & Sisk, P.A., Albuquerque, for defendants/third-party plaintiffs-appellees Xerox Corporation and Employers Insurance Corporation of Wausau.

## OPINION

MINZNER, Judge.

The Subsequent Injury Fund (Fund) appeals from judgments in favor of the employer and the worker, contending (1) that the worker's complaint against the Fund is barred because the certificate of preexisting physical impairment was executed as well as filed after the subsequent injury on which his complaint is based; (2) that, in any event, both the worker's and the employer's complaints against the Fund were time-barred; and (3) that neither the worker nor the employer may proceed against the Fund because they had entered a court-approved settlement prior to trial. Other issues listed in the docketing statement but not briefed are deemed abandoned. *State v. Doe*, 99 N.M. 456, 659 P.2d 908 (Ct.App. 1983). We affirm.

**BACKGROUND.**

The worker is forty-eight years old. He was employed as an electronic copier service technician by Xerox Corporation on May 4, 1983, when he suffered a work-related low back injury. He briefly returned to limited duty, but ultimately left work to have back surgery in August 1983. He has not returned to employment of any kind since that time.

He had experienced two prior low back injuries. One occurred in 1974, when he was working for another employer; as a result of that injury, he underwent surgical removal of two discs. He did not return to that job; rather, he obtained work with Xerox two years later. In 1981, he reinjured his low back, and again underwent surgery; Xerox re-employed the worker after he had been released for work.

The worker filed a complaint for worker's compensation against Xerox on April 23, 1984. At a deposition taken in June

1985, there was medical testimony that the worker "is now in the category of the failed back syndrome," "is unable to return to gainful employment of any type," and "has a permanent disability." The same doctor signed the certificate of preexisting physical impairment on December 12, 1985.

The worker filed an amended complaint naming the Fund as an additional defendant on January 11, 1985. The worker and Xerox filed a stipulation of settlement on January 22, 1985. Under the settlement, Xerox paid the worker $35,000 for disability, $6,000 for attorney fees, and $3,000 for medical expenses. The stipulation recited that the parties did not intend to limit any claim they had against the Fund. Xerox then filed a third-party complaint against the Fund.

The district court entered judgment approving the terms of the stipulated settlement and then tried the claims against the Fund. After trial, the court entered judgment in favor of the worker and in favor of Xerox, apportioning liability eighty percent to the Fund and twenty percent to Xerox. It directed that the Fund reimburse Xerox for that portion of Xerox's settlement in excess of the liability allocated to Xerox.

The Fund contends that the trial court erred in failing to dismiss the claims against it, relying on three general claims of error. We address one summarily, then discuss the other two separately. Each claim arises under the Subsequent Injury Act (SIA). *See* NMSA 1978, § 52–2–1. The SIA was amended while this appeal was pending, *see* 1986 N.M.Laws, ch. 22, §§ 45–52 and 102–103, and ch. 57, §§ 1–3; this opinion refers to the SIA as it read prior to amendment.

■ First, the Fund contends that because the certificate of preexisting physical impairment was not timely, the Fund cannot be held liable. Relying on NMSA 1978, Section 52–2–6(D), the Fund argues that it cannot be liable because the worker's injury occurred prior to the date the certificate was executed. As the Fund acknowledges, however, in *Vaughn v. United Nuclear Corp.*, 98 N.M. 481, 650 P.2d 3 (Ct.App.

1982), this court held that Section 52–2–6(D) was inconsistent with Section 52–2–6(A), and construed the former to permit the certificate to be executed and filed after the second injury, as long as the employer had actual knowledge of the worker's preexisting disability.

The Fund asks us to draw a distinction between certificates executed after, as well as filed after, the second injury and certificates executed before, but filed after, the second injury. In view of the fact that the supreme court recently reaffirmed *Vaughn, see Fierro v. Stanley's Hardware*, 104 N.M. 50, 716 P.2d 241 (1986) (*Fierro I*), we are bound by the supreme court's interpretation of *Vaughn*. We believe the distinction the Fund urges is not permitted under that interpretation.

## WHETHER THE CLAIMS AGAINST THE FUND ARE TIME–BARRED.

The Fund argues that the claims against it are time-barred, because the worker's amended complaint joining the Fund and Xerox's third-party complaint against the Fund were filed more than a year after the injury. *See* NMSA 1978, § 52–1–31(A); *see also* 1986 N.M.Laws, ch. 22, §§ 8 and 103.

Section 52–1–31(A) states that "if *the workman* fails to file a claim for compensation within the time required by this section, his claim * * * [is] barred." (Emphasis added.) It clearly limits a worker's claim against his or her employer. Our cases have held that this limitation is jurisdictional. *See Armijo v. United States Casualty Co.*, 67 N.M. 470, 357 P.2d 57 (1960).

■ The Fund cites NMSA 1978, Section 52–2–13 in support of their argument that the limitation also applies to claims against the Fund. Section 52–2–13 provides that "[t]he determination of the rights of an employee * * * under the provisions of this Subsequent Injury Act shall be made in the same manner as in cases arising under the Workmen's Compensation Act * * *." We understand this section to mean at least that procedures involved in claiming benefits under the SIA shall be followed as they

are in workmen's compensation claims; however, this does not mean that every provision that applies to a claim against an employer for workmen's compensation is also applicable to subsequent injury claims. Rather, such a claim requires a comparison of the purposes of the SIA and the provision for which incorporation is urged. *See Fierro v. Stanley's Hardware*, 104 N.M. 411, 722 P.2d 662, 25 SBB 726 (Ct.App. 1986) (*Fierro II*) (construing NMSA 1978, Section 52-2-12 as not incorporating NMSA 1978, Section 52-1-43(D), repealed 1986 N.M.Laws, ch. 22, § 13, into the SIA). In the absence of a clear indication of legislative intent, we have denied similar incorporation arguments. *See Gutierrez v. City of Gallup*, 102 N.M. 647, 699 P.2d 120 (Ct.App.1984) (rejecting the contention that either Section 52-2-12 or NMSA 1978, Section 52-2-13 incorporated NMSA 1978, Section 52-1-56(C), *see* 1986 N.M.Laws, ch. 22, § 103).

The Fund admits that there is no specific period of limitations on an employer's rights against the Fund under the SIA, but urges this court to extend the jurisdictional requirement in Section 52-1-31(A) to claims for reimbursement by the employer against the Fund. Their argument is based on language in Section 52-2-13, which deals with rights of the employee. We are not persuaded that the legislature intended to impose such a condition precedent on the employer's right to recover against the Fund. *Cf. Superintendent of Insurance v. Mountain States Mutual Casualty Co.*, 104 N.M. 605, 725 P.2d 581 (Ct.App.1986) (employer not a "claimant" under NMSA 1978, Section 52-1-54(C), *see* 1986 N.M. Laws, ch. 22, § 103, for whom legislature intended to provide attorney fees).

The legislature has delineated several ways in which the employer may shift some portion of the liability for benefits to the Fund. *See* NMSA 1978, § 52-2-5(A), (B), and (C); *see also* NMSA 1978, § 52-2-11(D), (E), and (F). Under the SIA, the worker may join the Fund in applying for a judicial determination of compensation; the employer, having been sued, may implead the Fund, or the employer, having commenced to pay benefits, may seek declaratory relief.

The legislature has not provided a time bar in describing the employer's right to seek contribution from the Fund after voluntary payments. The Fund's argument, in our judgment, requires that we make a distinction between those situations in which a worker sues his or her employer and the Fund is joined, and the situation in which the employer seeks contribution, although the employer has not been sued. The Fund offers no policy reason for distinguishing these situations.

Further, under our cases, the employer need not raise by answer the issue of whether the worker has complied with the limitation imposed by Section 52-1-31(A). *See Garza v. W.A. Jourdan, Inc.*, 91 N.M. 268, 572 P.2d 1276 (Ct.App.1977). It is not an affirmative defense waived by failure to raise it at an appropriate point. *See id.* Thus, the Fund's argument urges us to incorporate a prerequisite to recovery that is unique to the Workmen's Compensation Act. No policy reason for extending such a principle is obvious.

■ This court should not add language to statutes that the legislature has seen fit to omit. *State v. Pendley*, 92 N.M. 658, 593 P.2d 755 (Ct.App.1979). Surely it is equally inappropriate to imply jurisdictional limitations. When we consider the other incorporation arguments we have rejected, this one seems indistinguishable. For these reasons, we hold that Xerox did not need to prove its third-party complaint satisfied Section 52-1-31(A).

As to the worker's claim, it would be inconsistent with the overall purpose of workmen's compensation to bar his complaint against the Fund if Xerox is not barred. Public policy demands financial security for the injured worker and his family. Workmen's compensation was enacted to prevent workmen from becoming dependent upon the public welfare. *Wylie Corp. v. Mowrer*, 104 N.M. 751, 726 P.2d 1381 (1986). The Workmen's Compensation Act was adopted for the protection of

the worker, not the employer. *Smith v. Dowell Corp., a Division of Dow Chemical, USA*, 102 N.M. 102, 692 P.2d 27 (1984).

It also does not serve the purposes of a statute of limitations to hold that the worker's claim against the Fund is time-barred. The Fund argues that a one-year statute of limitations is necessary to avoid difficulties in proof. In this case, the worker was required to comply with Section 52-1-31(A), as is every worker whose employer resists the claim. Thus, evidence of the subsequent injury was available and discovery was possible within a reasonable period after the injury.

The Fund's policy arguments actually raise anew the problem posed for the Fund by a certificate executed and filed after the subsequent injury. We are not able to solve those problems by incorporating Section 52-1-31(A) into the SIA. That is the prerogative of the legislature, not this court. Although the SIA contains a number of unfortunate ambiguities, the situation calls for "legislative therapy." *Varos v. Union Oil Co. of California*, 101 N.M. 713, 715, 688 P.2d 31, 33 (Ct.App. 1984). We hold that Section 52-1-31(A) applies only to the worker's claim against his employer or insurance carrier, and not to claims against the Fund by either the worker, the employer, or the insurance carrier.

## WHETHER THE WORKER OR EMPLOYER IS BARRED FROM PROCEEDING AGAINST THE FUND BECAUSE OF THEIR SETTLEMENT.

The Fund also contends that the settlement between the employer and the worker bars further proceedings by either against the Fund. The court recently addressed the issue of the worker's right against the Fund. *See Romero v. Cotton Butane Co.*, 105 N.M. 73, 728 P.2d 483 (Ct.App.1986). In that case, the worker had joined his employer and the Fund in his claim. We held that in settling with his employer, the worker did not relinquish the right to continue his claim against the Fund. The agreement in this case is essentially the same; consequently, for the reasons stated in *Romero v. Cotton Butane Co.*, we hold that the trial court did not err in denying the Fund's motion for summary judgment as to the worker.

The Fund also argues that Xerox should not be able to proceed on its claim against the Fund after settling with the worker. We disagree.

The SIA applies when an employee with a permanent physical impairment incurs a subsequent disability as a result of an injury compensable under the Workmen's Compensation Act, which injury results in a permanent disability that is materially and substantially greater than that which would have resulted from the subsequent injury alone. NMSA 1978, § 52-2-9(A). If the SIA is applicable, liability for compensation is apportioned between the employer or its insurance carrier and the Subsequent Injury Fund. *Ballard v. Southwest Potash Corp.*, 80 N.M. 10, 450 P.2d 448 (Ct.App.1969).

Apportioning liability means a judicial determination of the extent of the employer's liability under the Workmen's Compensation Act, and of the amount of compensation due the worker for the combined disability. § 52-2-11(F). "The employer or his insurance carrier * * * *shall be reimbursed by the fund for any payments made in excess of his or its apportioned liability.*" *Id.* (Emphasis added.) The phrase "any payments" broadly covers all payments by the employer in excess of the apportioned liability. The statute does not distinguish the situation in which a sum has been paid pursuant to a lump sum settlement and the situation in which the worker is receiving weekly compensation from the employer. We conclude that the Fund is required to reimburse the employer for all payments made in excess of his apportioned liability.

The SIA in fact provides for settlement between the employer and the worker. *See* NMSA 1978, §§ 52-2-7 and 52-2-11(E). It is the policy of the law to favor compromise and settlement in workmen's compen-

282

sation cases. *Knippel v. Northern Communications, Inc.*, 97 N.M. 401, 640 P.2d 507 (Ct.App.1982). We believe that permitting an employer to proceed against the Fund after settling with an employee tends to further the purposes of the SIA as well as favoring compromise and settlement.

Prior to passage of the SIA, a worker recovered from his current employer for the full amount of a present, compensable disability, even if much of the total was attributable to a preexisting condition. Thus, an employer might have been liable for a disability that had little connection with the employee's work. *See generally* Note, *Workmen's Compensation in New Mexico: Pre-Existing Conditions and the Subsequent Injury Act,* 7 Nat.Resources J. 632 (Oct.1967). *See, e.g., Reynolds v. Ruidoso Racing Ass'n,* 69 N.M. 248, 365 P.2d 671 (1961) (where there is a direct relationship or causal connection between accidental injury and resulting disability, a worker is entitled to compensation to full extent of disability, even though attributable in part to preexisting condition).

The SIA was designed to encourage employers to hire handicapped persons by equitably adjusting the employer's liability under the Workmen's Compensation Act for injuries to a previously-disabled worker. NMSA 1978, § 52–2–2; *Gutierrez v. City of Gallup.* In an appropriate case, an employer may shift all or part of the liability for a compensable disability to the Fund. The basic thrust of the SIA is to limit an employer's liability to the amount of disability attributable to the second injury. *Romero v. Cotton Butane Co.* The liability of the Fund to a subsequently-injured worker is coexistent with, rather than derivative from, the liability of the employer and its carrier; these liabilities may be addressed separately in settlement. *Id.* By permitting an employer who has settled with a worker to proceed against the Fund, the SIA encourages the employer to pay something initially; subsequent litigation between the employer and the Fund will resolve the issue of primary concern to them.

The supreme court has described the Fund as a custodian or trustee whose main purpose is to insure that the intent of the legislation is implemented. *Fierro I.* We believe a reading of the SIA in light of its purposes, together with the policy favoring settlement of claims, supports the result we reach: an employer may proceed against the Fund after settling with an injured worker, unless the settlement permits an inference that the employer waived that right. In this case, the settlement does not permit that inference. Consequently, Xerox's settlement with the worker did not extinguish the employer's right to apportionment. *Cf. Romero v. Cotton Butane Co.* (each judgment barred further action by the employer and its insurance carrier against the Fund).

The Fund argues that a court is unable to make a true apportionment between the employer and the Fund after a settlement has been reached between the employer and the worker. We disagree. Liability of the Fund is limited to its apportioned liability. *See* NMSA 1978, § 52–2–11. Approval of a prior settlement between the worker and an employer should not result in a total payment by the Fund of amounts in excess of its apportioned liability.

**CONCLUSION.**

The trial court is affirmed. The worker is awarded $2,500.00 appellate attorney fees to be paid by the Fund. No attorney fees are awarded to Xerox. *See Superintendent of Insurance v. Mountain States Mutual Casualty Co.*

IT IS SO ORDERED.

DONNELLY and GARCIA, JJ., concur.