765 P.2d 759

Michelle D. SCHRECK, Plaintiff,

v.

PLASTECH RESEARCH DIVISION, Employer, and CNA Insurance Companies, Insurer, Defendants/Third–Party Plaintiffs–Appellees,

v.

Fabian CHAVEZ, Superintendent of Insurance, and the Subsequent Injury Fund, Third–Party Defendants–Appellants.

No. 10354.

Court of Appeals of New Mexico.

Sept. 15, 1988.

Certiorari Denied Oct. 25, 1988.

Christopher M. Mislow, Barbara L. Shapiro, Poole, Tinnin & Martín, P.C., Santa Fe, for third-party defendants-appellants.

E.W. Shepherd, Mary Therese Buescher, Hatch, Beitler, Allen & Shepherd, P.A., Albuquerque, for defendants/third party plaintiffs-appellees.

## OPINION

DONNELLY, Chief Judge.

The Subsequent Injury Fund (Fund) appeals from a district court judgment determining that it is 80% liable for worker's compensation benefits payable to plaintiff under the Subsequent Injury Act (Act), NMSA 1978, Sections 52–2–1 to –13 (Repl. Pamp.1987 & Supp.1988). The Fund raises six issues on appeal; however, we determine that its challenge to the sufficiency of the evidence to support the trial court's finding of actual knowledge of the existence of a preexisting physical impairment is dispositive and reverse.

Plaintiff was diagnosed as suffering from Reiter's Syndrome. The disease is a form of arthritis which affects the body's joints, primarily the spine, knees, ankles and neck. Although plaintiff has had the

disease for a number of years, the underlying ailment was first diagnosed by a physician, Dr. Albert Rizzoll, in November 1984, four years after she began her employment with Push Button, Inc., a company later acquired by Plastech Research Division (Plastech). Thereafter, plaintiff experienced occasional flare-ups of the disease resulting in tenderness and soreness in her joints but continued to work for Plastech as a machine operator.

On June 6, 1985, plaintiff twisted her back while cleaning a machine during her employment. She was examined by Dr. Barry M. Diskant, who also diagnosed plaintiff's underlying condition as Reiter's Syndrome, and found that her work-related accident resulted in an aggravation of her preexisting condition. Plaintiff returned to work following this injury, but frequently missed work because of pain and stiffness. On January 31, 1986, plaintiff filed suit against Plastech and its workmen's compensation carrier, CNA Insurance Company. Thereafter, Plastech filed a third-party complaint against the Fund.

In February 1987, after the worker's compensation action had been commenced, Plastech filed with the Department of Insurance a certificate of preexisting physical impairment. The certificate was signed by plaintiff and Dr. Barry M. Diskant, and it indicated that Dr. Diskant had examined plaintiff on June 21, 1985, and had determined that plaintiff had a 5% preexisting impairment due to Reiter's Syndrome.

Plastech's claim for relief against the Fund was tried by the district court in September 1987. Shortly before trial, plaintiff and Plastech entered into a settlement agreement resolving plaintiff's claims against Plastech. The settlement, however, did not include the Fund. The trial court found that Janice Lang, an accounting analyst for Plastech, became acquainted with plaintiff when plaintiff began work in 1984, and that "[w]hen Ms. Lang first met [plaintiff] up until the date of the incident in question, she felt [plaintiff] had a handicap or physical defect of an 'arthritic' type that might affect her work and job ability. In addition, [plaintiff] complained to Ms. Lang of backaches and feeling stiff while at work."

The trial court concluded that "[plaintiff's] employer, Plastech, knew that [plaintiff] suffered a handicap or physical defect prior to June 5, 1985 based upon Janice Lang's observations and complaints to Ms. Lang by [plaintiff]," and thus had actual knowledge of plaintiff's preexisting disability; that plaintiff was permanently and partially disabled to 75% as a result of the accident; and plaintiff was "entitled to future compensation benefits based on a 75% disability." The trial court apportioned 80% liability against the Fund and 20% liability against Plastech.

*Sufficiency of Evidence*

The Fund contends that the information and observations of Lang concerning claimant's handicap were insufficient to constitute an exception to the rule that plaintiff is required to file a timely certificate of preexisting impairment as a prerequisite to any recovery against the Fund under the Subsequent Injury Act.

In *Vaughn v. United Nuclear Corporation*, 98 N.M. 481, 650 P.2d 3 (Ct.App.1982), this court held that the Fund could be held liable for a portion of a worker's disability under the Act when the certificate of preexisting physical impairment was filed after a subsequent injury, so long as the employer had actual knowledge of the worker's disability. Thus, the *Vaughn* court found that the language "at any time" constituted a permissive, and not a mandatory, filing requirement. The "actual knowledge" exception in *Vaughn* was reaffirmed by the New Mexico Supreme Court in *Fierro v. Stanley's Hardware*, 104 N.M. 50, 716 P.2d 241 (1986). *See Duran v. Xerox Corp.*, 105 N.M. 277, 731 P.2d 973 (Ct.App.1986). *But see* § 52–2–6 (containing changes enacted by 1988 amendment).

■ The Fund contends that the record fails to contain substantial evidence to support the trial court's finding and conclusion that Plastech had "actual knowledge" of plaintiff's preexisting impairment. We agree that the record fails to show that the

employer had the requisite actual knowledge to bring this cause within the exception provided in *Vaughn*. The Fund submitted requests for admissions to Plastech pursuant to SCRA 1986, 1–036. The requests for admissions and Plastech's written responses provided, in part:

    5. Prior to June 6, 1985, Plastech Research Division was unaware that Plaintiff * * * suffered from an arthritic condition.

        RESPONSE: Admitted.

    6. Prior to June 6, 1985, Plastech Research Division was unaware that Plaintiff * * * was undergoing treatment for Reiter's Syndrome.

        RESPONSE: Admitted although we deny we did not know she was being treated by Dr. Rizzoli.

Rule 1–036(B) specifically provides that "[a]ny matter admitted under this rule is conclusively established unless the court on motion permits withdrawal or amendment of the admission." Plastech argues that its admission no. 5 was a typographical error. Plastech, however, did not seek permission from the trial court for leave to amend or withdraw the admission; thus, the admission was binding in its effect. *See also* SCRA 1986, 12–216(A).

Plastech argues that even if its response to the request for admissions is not considered harmless error, the testimony of Janice Lang, nevertheless, constituted sufficient evidence to support the trial court's finding that Plastech had "actual knowledge" of the fact that plaintiff was suffering from a preexisting physical impairment. Testimony seeking to contravene the admissions of Plastech was improper. The failure of a responding party to move to have admissions withdrawn or amended precludes attempts to dispute the admitted fact and forecloses consideration of evidence to the contrary. *See Fleitz v. Van Westrienen,* 114 Ariz. 246, 560 P.2d 430 (Ct.App.1977); *Taylor v. Cameron & Barkley Co.,* 161 Ga.App. 750, 289 S.E.2d 820 (1982); *W.W. & W.B. Gardner, Inc. v. Park West Village, Inc.,* 568 P.2d 734 (Utah 1977); *see also Jensen v. Pioneer*

*Dodge Center, Inc.,* 702 P.2d 98 (Utah 1985).

Because our disposition of this point is dispositive, we do not reach the remaining issues raised by the Fund.

The judgment against the Fund is reversed and the cause is remanded with directions to enter judgment for the Fund.

IT IS SO ORDERED.

BIVINS and FRUMAN, JJ., concur.