815 P.2d 1179

Anita ULIBARRI, as Personal Representative of the Estate of Augustine Ulibarri, Deceased, Plaintiff–Appellee,

v.

HOMESTAKE MINING COMPANY, self insured, Defendant,

and

New Mexico Superintendent of Insurance and Subsequent Injury Fund of the State of New Mexico, Defendants–Appellants.

No. 11606.

Court of Appeals of New Mexico.

June 25, 1991.

Frederick B. Howden, Grants, for plaintiff-appellee.

Nathan H. Mann, M. Clea Gutterson, Gallagher, Casados & Mann, P.C., Albuquerque, for defendants-appellants.

## OPINION

APODACA, Judge.

The New Mexico Superintendent of Insurance and the Subsequent Injury Fund (the Fund) appeal the trial court's judgment entered in May of 1989 on remand. Plaintiff's (claimant) husband was the injured worker in this appeal. Claimant is the personal representative of his estate. The judgment apportioned liability between employer and the Fund, awarded post-judgment interest, and awarded attorney fees. The Fund raises the following issues: whether the trial court (1) erred in awarding post-judgment interest from the date of the pre-appeal judgment instead of from the date of the post-appeal judgment; (2) properly followed this court's mandate to redetermine the attorney fees award in light of the apportionment of liabilities; (3) abused its discretion in awarding attorney fees to claimant; (4) awarded claimant an impermissible double recovery; and (5) erred in charging the Fund with claimant's costs and attorney fees incurred on remand. We reverse with respect to issues one and five and affirm on issues two through four.

## BACKGROUND

This appeal involves a workers' compensation proceeding in which claimant settled with defendant Homestake Mining Company (employer) before trial. Later, employer settled with the Fund. This appeal evolves from a dispute between claimant and the Fund. This is the second appeal arising out of claimant's compensation dispute. In the first appeal, after claimant was awarded a judgment against the Fund, which represented its apportioned liability, the Fund raised several issues regarding the trial court's judgment entered in November of 1987. This court then issued its memorandum opinion, *Ulibarri v. Homestake Mining Co.*, (Ct.App. 10,389) (memorandum opinion filed October 18, 1988) (*Ulibarri I*). In that decision, we remanded the case for an apportionment of liability between the Fund and employer. Instead of apportioning liability in the first judgment, the trial court had held the Fund liable for all benefits to which claimant was entitled. This court also instructed the trial court to redetermine its award of attorney fees in light of the respective liabilities of the Fund and employer. The Fund appeals from the trial court's judgment entered on remand from this court.

## DISCUSSION

We first address claimant's argument that the Fund did not properly preserve the issues for appeal, because of the Fund's purported failure to submit requested findings and conclusions. The Fund's requested findings and conclusions were not filed until after the order from which the Fund appeals. However, the late findings and conclusions were filed pursuant to the trial court's instructions. Thus, we conclude the Fund did not lose the right to have these issues heard on appeal. *See University of Albuquerque v. Barrett*, 86 N.M. 794, 528 P.2d 207 (1974).

### 1. *Post-judgment interest.*

The Fund argues that post-judgment interest should accrue from the date of the second judgment, after apportionment, rather than from the date of the original judgment. We note initially that post-judgment interest is intended to prevent the inequity of denying the prevailing party the cost of the lost opportunity of using the money that the judgment debtor had use of during the pendency of the appeal. *See Ulibarri v. Gee*, 107 N.M. 768, 764 P.2d 1326 (1988); *Genuine Parts v. Garcia*, 92 N.M. 57, 582 P.2d 1270 (1978).

Our supreme court has laid down guidelines regarding when post-judgment interest accrues.

> The basic rule is that when this Court reverses and effectively wipes out all or a portion of a judgment, rendering it a nullity, and remands for new findings and the award of damages through the exercise of discretion, then interest accrues from the date of the new judgment; but with a mere modification, interest accrues from the date of the original judgment.

*Ulibarri,* 107 N.M. at 768, 764 P.2d at 1326.

This issue is resolved by determining the effect *Ulibarri I,* which remanded the first appeal to the trial court for an apportionment of liability, had on the trial court's original judgment. If it can be said that, on remand, there was nothing for the trial court to do but comply with the mandate, then the original order was merely modified, and interest accrues from the original order. If, however, the mandate contemplated further procedures below, as we believe happened in this case, including the consideration of evidence other than that considered at trial, and the making of new findings, then the interest would accrue from the date of the judgment after remand. *See Ulibarri v. Gee; Tome Land & Improvement Co. v. Silva,* 86 N.M. 87, 519 P.2d 1024 (1973); *Bank of New Mexico v. Earl Rice Constr. Co.,* 79 N.M. 115, 116, 440 P.2d 790, 791 (1968) (quoting Annotation, *Date From Which Interest on Judgment Starts Running as Affected by Modification of Amount of Judgment on Appeal,* 4 A.L.R.3d 1221 (1965)).

In *Ulibarri I,* claimant settled with employer before trial. Claimant's damages were subsequently determined to merit $20,695.75 in workers' compensation benefits. The trial court, however, failed to apportion the liability between employer and the Fund. Consequently, this court remanded the case for the apportionment. The apportionment was necessary to assess the actual percentage of compensation benefits claimant was entitled to recover from the Fund. Thus, on remand, the trial court

was required to hold a hearing, take additional evidence concerning the correct apportionment of liability, based on the extent to which claimant's disability was due to the subsequent injury, and enter appropriate findings.

This case is distinguishable from *Earl Rice* because there, the amount of damages was simply remitted. In effect, the supreme court's ruling was merely a *pro tanto* affirmance of the trial court. The facts of this appeal are more analogous to *Varney v. Taylor,* 81 N.M. 87, 463 P.2d 511 (1969), because here, there was not any money judgment from which interest could properly accrue until the rendering of the second judgment. The Fund's monetary obligation to claimant could not be determined until liability was apportioned. The trial court had misstated the law when it concluded that the Fund was liable for all of claimant's disability caused by his subsequent injury. Instead, the Fund was only liable for the difference between the amount of the second disability and the total amount that claimant was entitled to as a result of both injuries. *See Lea County Good Samaritan Village v. Wojcik,* 108 N.M. 76, 766 P.2d 920 (Ct.App.1988). It was possible that the trial court could have determined that the Fund was not liable for any of claimant's disability based on its conclusion that claimant's disability was due solely to the second injury. The very foundation on which the Fund's liability was based, namely apportionment, was determined on remand.

Since we conclude that the remand by this court was not simply a *pro tanto* affirmance of the first judgment, but rather required the consideration of new evidence and new findings regarding the percentage of the Fund's liability, the post-judgment interest accrued not from the first, but from the second judgment.

2. *Mandate to redetermine attorney fees.*

In *Ulibarri I,* we ordered the trial court on remand to "redetermine its award of attorney fees in light of the respective liabilities of the Fund and employer." Af-

ter an evidentiary hearing, the trial court issued its order of May 1989. In that final order, the trial court found that "the prior award of $6,900.00 for fees to [claimant's] attorneys for [services] through and including trial was reasonable and the same should be charged to the subsequent injury fund[.]"

The Fund contends that *Ulibarri I* required that the apportionment of attorney's fees between the Fund and employer be equivalent to the apportionment of liability between the Fund and employer. Therefore, it argues, it should have been ordered to pay only eight-ninths of the $6,900.00 fee because it was found to be responsible for only eight-ninths of the liability. We disagree. We have held that the apportionment of attorney's fees need not be equivalent to the apportionment of liability. *See Rader v. Don J. Cummings Co. Inc.*, 109 N.M. 219, 784 P.2d 38 (Ct.App.1989). We do not read *Ulibarri I* as requiring such a mathematical apportionment. Simply because the trial court did not reapportion the attorney fees award does not mean that it did not "redetermine its award of attorney fees." Consequently, we disagree with the Fund's assertion that the trial court failed to follow this court's mandate to redetermine the award of attorney fees.

### 3. *Abuse of discretion in the award of attorney fees.*

■ The total amount of attorney fees awarded by the trial court against the Fund was $7,400.00. The only amount in dispute with respect to this specific issue is $6,900.00, the attorney fees awarded by the trial court for the litigation up through the trial on the merits. The additional $500.00 was awarded for the apportionment on remand and will be considered later in this opinion. Liability against the Fund was determined to be $18,395.52 after apportionment. The Fund complains that the trial court abused its discretion because the attorney fees award constituted 40.22% of the judgment against the Fund.

Our supreme court has set forth a general range for attorney fees in workers' compensation cases to be between 6% to somewhat less than 25%. *Woodson v. Phillips Petroleum Co.*, 102 N.M. 333, 695 P.2d 483 (1985). However, the supreme court noted that "Section 52–1–54 does not fix attorney fees at *any* specific percentage of the benefits awarded to the workman." *Id.* at 337, 695 P.2d at 487 (emphasis added). Additionally, as we have noted previously: "We do not agree that comparison with other cases is the proper means to determine the reasonableness of the amount awarded. Each case must be judged on its own merits." *Shadbolt v. Schneider, Inc.*, 103 N.M. 544, 551, 710 P.2d 738, 745 (Ct.App. 1985). The trial court in this appeal considered the present value of the claimant's award to be $18,395.52 after remand and apportionment.

Yet, the amount of claimant's award is not the sole inquiry. There are a number of other factors concerning the specifics of each case that must be taken into account in determining whether the attorney fees are just and reasonable. *Fryar v. Johnsen*, 93 N.M. 485, 601 P.2d 718 (1979), indicated several factors that should be examined, such as the novelty of the issues, complexity of the case, time expended by the attorney, the ability, reputation, and skill of the attorney, among others. *See also Board of Educ. of Espanola v. Quintana*, 102 N.M. 433, 697 P.2d 116 (1985); *Woodson v. Phillips Petroleum Co.* An award of attorney fees must have evidentiary support, but the trial court is not required to make a finding of fact on each factor set forth for attorney fees under *Fryar*. *Sanchez v. Homestake Mining Co.*, 102 N.M. 473, 697 P.2d 156 (Ct.App. 1985). Rather, it need only make specific findings on those factors for which there is evidentiary support. *Id.*

The record discloses that in this appeal most of the factors enumerated in *Fryar* and *Woodson* were considered by the trial court. Specifically, the trial court stated that "[claimant's] counsel expended considerable time and effort in this matter * * * wherein the issues were substantially contested, and [claimant] gained substantial success in the matter on the issues contested." The trial court also stated that, "considering the ability, experience, skill and

reputation of [claimant's] attorney, and the fees normally charged in this locality for similar legal services, reasonable attorney fees are * * * $6,900.00." These findings were reaffirmed by the trial court in its subsequent order following remand.

The trial court was within its discretion in finding that claimant's attorney "expended considerable time and effort in this matter." For example, the Fund fully contested its liability up through the trial on the merits. The trial included a hearing on the Fund's motion for summary judgment, which argued to the very end that claimant did not have a cause of action against the Fund. *Cf. Woodson v. Phillips Petroleum Co.* (defendant admitted liability in its answer and offered to pay compensation at the maximum rate). Additionally, there were depositions taken, interrogatories answered, requests for productions made, requested findings and conclusions proffered, several hearings on various motions, a pretrial conference, a trial on the merits, and a separate hearing on attorney fees. *Cf. Fryar v. Johnsen* (there was "not even a faint hint as to the motivation of the judge in granting such an amount for attorney fees"). We conclude these facts were adequate to support the trial court's finding that $6,900.00 was a fair and reasonable award.

Our supreme court concluded in *Woodson* that, although it was setting the general parameters between 6% to approximately 25%, "[it did] not wish to inhibit trial courts from exercising their discretion to enlarge or reduce attorney fees in accordance with all of the statutory and *Fryar* factors." *Id.* 102 N.M. at 338, 695 P.2d at 488. Indeed, only two weeks after *Woodson*, our supreme court held that an attorney fees award of $2,500.00 was inadequate even though it equalled approximately 33% of the present value of the award to the worker. *Manzanares v. Lerner's, Inc.*, 102 N.M. 391, 696 P.2d 479 (1985). The court expressed concern that inadequate compensation would discourage attorneys from representing workers with minor to moderate injuries. It noted that such claims can often require as vigorous representation as in cases dealing with more

major injuries. *But see Smith v. Trailways, Inc.*, 103 N.M. 741, 713 P.2d 557 (Ct.App.1986) (range of from 6% to somewhat less than 25% should serve as useful guidelines *except in extraordinary cases* ). We thus hold that the trial court did not abuse its discretion and therefore affirm the initial award of attorney fees.

### 4. *Double recovery.*

■ The Fund complains that claimant received an impermissible double recovery because the trial court did not award the Fund any credit from claimant's settlement with employer. Before trial, claimant settled with employer for $7,500.00. Claimant's damages were found to merit $20,695.75 of workers' compensation benefits. The Fund was apportioned liability for 80% of claimant's 90% disability, resulting in an $18,395.52 judgment against the Fund. Thus, if claimant was permitted to recover $7,500.00 from employer in addition to $18,395.52 from the Fund, she will recover a total of $25,895.52. The Fund claims that, to avoid a windfall, the amount of the Fund's liability payable to claimant should be reduced by $5,199.77. This would result in a total payment to claimant of $20,695.75. We disagree with the Fund's analysis.

In essence, the Fund's position is that, if a worker enters into a settlement with an employer that later, following litigation against the Fund, turns out to be advantageous, the worker should be required to disgorge the "excess" resulting from the favorable settlement. Similarly, we presume, if claimant had settled with the Fund in this case and pursued her claim against employer, and the settlement with the Fund had turned out to be advantageous to claimant, the Fund would require claimant to hand over the "excess." The Fund does not say what its position would be if claimant's settlement had turned out to be disadvantageous to claimant and advantageous to employer. We doubt, however, that the Fund would argue that employer or the Fund should have to increase the amount paid claimant to eliminate the "shortfall."

We decline to adopt the position urged on us by the Fund.

We consider the authorities relied on by the Fund in support of its position as inapplicable to this appeal. In *Mares v. Valencia County Sheriff's Dep't*, 106 N.M. 744, 749 P.2d 1123 (Ct.App.1988), worker was not allowed to receive benefits from both employer and the Fund for the same eight-week period following the injury, because the workers' compensation statute specifically mandated that employer be liable for benefits during that eight-week period. On the other hand, this appeal involves no such clear statutory mandate denying a worker the benefits of a favorable settlement. Similarly, *Duran v. Xerox Corp.*, 105 N.M. 277, 731 P.2d 973 (Ct.App.1986), involved an employer that had paid worker *all* the benefits to which worker was entitled, *including* benefits that might have been the Fund's responsibility. The employer then pursued a reimbursement claim against the Fund. Here, employer and claimant presumably settled only employer's share of the liability, and claimant then pursued a separate claim against the Fund for the remainder of the benefits owed claimant. *Gantt v. L & G Air Conditioning*, 101 N.M. 208, 680 P.2d 348 (Ct.App.1983), cited by the Fund in support of its argument, is actually authority for the proposition that, absent a statutory prohibition, a worker may recover from more than one source for the same work-related injury.

In the absence of statutory guidance on this issue, fundamental fairness must be our guide. *See Paternoster v. La Cuesta Cabinets, Inc.*, 101 N.M. 773, 689 P.2d 289 (Ct.App.1984). We find nothing unfair about encouraging settlement and allowing parties to keep the benefits of their voluntary bargains, even if later litigation involving other parties suggests the proper resolution would have been different than the one expressed in the settlement. *Cf. Wilson v. Galt*, 100 N.M. 227, 668 P.2d 1104 (Ct.App.1983) (settlement between injured party and one tortfeasor has no effect on amount injured party can collect from non-settling tortfeasor who is not jointly and severally liable with settling tortfeasor). This is especially true when the Fund's apparent position is that an employer and the Fund would be allowed to keep the benefits of their bargains, while a worker would not be allowed to do so. The whole purpose of settlements would be destroyed if we held they are nonbinding, depending on the results of later litigation involving third parties.

Finally, it is important to note that, under the judgment in this appeal, the Fund was required to pay only its adjudicated share of claimant's benefits. It has no responsibility to pay for the employer's apportioned share of those benefits. The Fund is essentially unaffected by the settlement between claimant and employer. *Cf. Wilson v. Galt* (nonsettling tortfeasors are responsible only for their share of liability; plaintiff cannot recover any shortfall from the nonsettlors, but may retain any benefits of a favorable bargain).

The Fund argues that the result we reach is unfair because, under *Duran v. Xerox Corp.*, it would be required to reimburse employer for any payments by employer that are in excess of employer's apportioned share of liability. The Fund misconstrues our decision in *Duran*. As we noted previously, *Duran* was decided in the context of an employer that had paid both its share of benefits and the Fund's potential share. Under those circumstances, it was entirely reasonable that employer should be able to recover from the Fund for the Fund's share of the liability to worker. Where an employer has only settled with worker for its own share of the liability, however, the employer should not later be able to pursue the Fund if the settlement turns out to be disadvantageous to employer. The *Duran* opinion says as much, by stating that a settling employer may proceed against the Fund after settling, *unless* the settlement permits an inference that employer waived the right. *Id.* 105 N.M. at 282, 731 P.2d at 978.

If employer's settlement with worker is solely for employer's share of the liability, it would indicate that employer is waiving the right to proceed against the Fund. We emphasized this point in *Mares v. Valencia County Sheriff's Dep't*, explaining that the

Fund is not bound by an employer's settlement with worker. *Id.*, 106 N.M. at 749, 749 P.2d at 1128. An employer cannot enter into a bad bargain, wait to see the results of litigation between the worker and the Fund, and then attempt to recoup its losses from the Fund.

In this appeal, the Fund apparently settled with employer to reimburse employer for some of the medical benefits and compensation paid by employer. It is not clear to what extent this settlement might have overlapped with the settlement proceeds paid by employer to claimant since employer had already paid claimant's medical bills and these bills were not part of the settlement between claimant and employer. In other words, much of the settlement between employer and the Fund might have been directed toward reimbursing employer for paying the Fund's share of the medical bills, leaving little or none of the settlement amount to overlap with the cash payment made by employer to claimant. If the Fund chose to settle with employer and reimburse employer for a portion of the settlement amount, the Fund must live with that bargain. By negotiating settlements with both the employer and worker, the Fund can protect itself against paying twice for the same obligation. Here, the Fund's settlement does not affect claimant's right to keep the benefits of her settlement.

5. *Attorney fees and costs on remand.*

■ The Fund contends that it was error for the trial court to charge the Fund with the claimant's costs and attorney fees incurred after remand. The Fund's argument is that claimant was already awarded appropriate costs and fees in the first judgment, that the remand was due to claimant's failure to properly prove the Fund's liability to him in the first trial, and that the Fund should not be penalized for its success in the first appeal. We agree. Both parties apparently concede that this issue is resolved by determining who has the burden of proof on the issue. We thus do not discuss any other standards by which fees and costs may be awarded.

The party alleging the affirmative of an issue has the burden of proving that issue. *Smith v. Trailways, Inc.*, 103 N.M. 741, 713 P.2d 557 (Ct.App.1986); *Carter v. Burn Constr. Co.*, 85 N.M. 27, 508 P.2d 1324 (Ct.App.1973). In *Ulibarri I*, we remanded for an apportionment of liability between the Fund and employer. As we noted previously, it was possible on remand for the Fund to be apportioned 0% liability. Thus, this case is analogous to *Romero v. Cotton Butane Co.*, 105 N.M. 73, 728 P.2d 483 (Ct.App.1986). In *Romero*, we observed that subsequently injured workers alleging liability of the Fund bear the burden of proof of that liability. In the present case, claimant's recoverable damages were dependent on a finding of apportionment of liability against the Fund. Thus, apportionment was an affirmative issue to be proved by claimant.

In *Trailways*, we stated that, "[o]nce the worker has established his right to recovery, it makes little difference to him how he is paid. Because the employer or its carrier seeks repayment from the Fund, the burden rests with those parties to prove apportionment." *Id.*, 103 N.M. at 745, 713 P.2d at 561. The facts of this appeal are distinguishable from those in *Trailways*. Although claimant had established she was entitled to workers' compensation benefits in the amount of $20,695.75, she nonetheless had to worry about how she would be paid. Before trial, claimant had settled with employer for $7,500.00. Thus, claimant was precluded from seeking further compensation from employer. Consequently, had claimant not been successful on remand in establishing an apportionment of liability against the Fund, she would not have received any further compensation. Thus, it made a big difference to claimant to establish how she would be paid.

Because claimant had the burden of proof on the issue of apportionment, we hold that the Fund should not have been charged with claimant's costs and attorney fees on remand. Consequently, we reverse on this issue.

■ We also address claimant's request that she be awarded reasonable attorney fees resulting from the Fund's appeal. We hold that claimant is not entitled to attorney fees for defending the trial court's previous award of attorney fees. *See Archuleta v. Safeway Stores, Inc.*, 104 N.M. 769, 727 P.2d 77 (Ct.App.1986). Thus, with respect to issues two and three, we decline to award attorney fees to claimant. However, claimant is entitled to attorney fees in the amount of $750.00 for prevailing on issue four.

CONCLUSION

We reverse the trial court's award of post-judgment interest from the date of the first judgment and remand with instructions to enter an order awarding post-judgment interest from the date of the second judgment. We also instruct the trial court to withdraw that portion of its order of May 31, 1989, awarding claimant expert witness fees of $250.00 and attorney fees of $500.00. We affirm the trial court on issues two through four. Claimant is awarded $750.00 in attorney fees on appeal, as well as her costs.

IT IS SO ORDERED.

HARTZ and CHAVEZ, JJ., concur.